## COX ET AL. *v.* COX ET AL.

DESCENT.—*Statute.*—*Basis of Distribution.*—Under the first and second sections of our statute of descent, where a person dies intestate, without living children, leaving surviving grandchildren and great-grandchildren, descendants of a deceased grandchild, the grandchildren inherit *per capita*, taking share and share alike without regard to the number of the children of said intestate, and the great-grandchildren inherit *per stirpes*, taking together the share which said deceased grandchild would have taken if living.

SAME.—The statute of 1852 does not in this respect, change the rule of descent as prescribed in the revised code of 1843, but is in harmony with the latter.

From the Morgan Common Pleas.

*W. R. Harrison, W. S. Shirley, S. Claypool,* and *F. P. A. Phelps,* for appellants.

*C. F. McNutt* and *G. W. Grubbs,* for appellees.

BUSKIRK, J.—The record in this cause presents for our decision but a single question, the solution of which depends upon the construction which should be placed upon the first and second sections of our statute of descents. The first and second sections of our statute of descents are as follows:

"Sec. 1. That the real and personal property of any person dying intestate, shall descend to his or her children in equal proportions, and posthumous children shall inherit equally with those born before the death of the ancestor.

"Sec. 2. If any children of such intestate have died intestate, leaving a child or children, such child or children shall inherit the share which would have descended to the father or mother, and grandchildren, and more remote descendants, and all other relatives of the intestate, whether lineal or collateral, shall inherit by the same rule: Provided, that if the intestate shall have left at his death grandchildren only alive, they shall inherit equally." 1 G. & H. 291.

The material facts of the case are these :

Abner Cox died, leaving a large personal estate undisposed of by will. Seven children were born to him, all of whom died before him. Each of these children left children surviving them. One grandchild died leaving children surviving him. Only grandchildren and the descendants of grandchildren survived the ancestor.

There were thirty-three lineal heirs of the said Abner, thirty-one of whom were grandchildren, and two were great-grandchildren. Certain of the children of the said Abner left but one heir surviving them, while others left a large number.

The appellants, who are the sole heirs of certain of the children of the said Abner, filed their petition in the court below, alleging the foregoing facts, and praying that the said estate should be distributed purely *per stirpes*, that is, that said estate should be divided into seven equal parts in accordance with the number of the children born to the decedent; in other words, that the children, though all dead before their father, should be made the basis of distribution.

The appellees filed their cross petition, alleging substantially the same facts, but averring that each grandchild is entitled to one thirty-second part of said estate, and that the great-grandchildren are entitled to one thirty-second part

as the representatives of their deceased father, and praying for an order of distribution accordingly; in other words, that the grandchildren, instead of the children of the said Abner, should be taken as the basis of distribution.

The appellants demurred to the cross petition, upon the ground that it did not contain facts sufficient to constitute a cause of action, but the demurrer was overruled, to which the appellants excepted, and they refusing to plead further, final judgment was rendered in favor of the appellees, decreeing the distribution of such estate in accordance with the prayer of the cross petition.

From this judgment, the plaintiffs below appealed, and have assigned for error the overruling of the demurrer to the cross petition.

The respective positions assumed by the learned counsel engaged in this cause may be briefly stated as follows:

Counsel for appellants insist, that though no children were alive at the death of the ancestor, thus leaving the grandchildren next in degree and entitled, if all of equal degree, to share equally, yet because there are alive two great-grandchildren, children and heirs of a grandchild deceased, the rule of descent or distribution is changed thereby; that they are no longer entitled to take equally in right of their being next in degree or of kin to the ancestor, but they are remitted to their rights as representatives of their fathers or mothers, children of the decedent, and are entitled to take only the share he would have taken, if living.

Counsel for appellants, however, admit, that if grandchildren alone had survived, they would have taken equally, or *per capita*, as next in degree or nearest in kin, but insist that a grandchild having died, leaving representatives, changes the whole rule of descent thenceforward, they taking *per stirpes*, each in his representative capacity; the children, though dead before the ancestor, become the basis of distribution, and each heir or class of heirs take the share that their fathers or mothers, if living, would have taken.

Cox *et al. v.* Cox *et al.*

Counsel for appellees contend that the death of all the children before the ancestor left the grandchildren as first in degree and next of kin, entitled thenceforward to take in their own right as next of kin, and no longer standing in their mere representative capacity, inheriting from the ancestor exactly as their fathers or mothers would have inherited; that as next of kin they were entitled to take equally; that the death of a grandchild, leaving representatives, did not and could not change their *status*, but that such great-grandchildren, instead of taking equally with the grandchildren, took only the share their father would have taken, if alive, just as grandchildren would take only the share of their father, when children survived; in other words, that, in the present case, all the grandchildren standing in equal degree and as next of kin take in their own right each an equal portion of the inheritance, and the great-grandchildren standing in unequal degrees take, as the representatives of their father, the share he would have taken, if alive, the descent, no children surviving the ancestor, being cast directly upon the grandchildren as next of kin.

The following rules or canons of descent are deducible from the doctrine laid down by the most eminent English and American text writers.

1. The degrees of consanguinity. In the descending line, children constitute the first degree, grandchildren the second, and so on to the remotest degree. Each degree is complete and distinct. Each one may become the basis of distribution in certain contingencies.

2. If a person dying seized or as owner of land leaves lawful issue of different degrees of consanguinity, the inheritance shall descend to the children and grandchildren of the ancestor, if any be living, or to the issue of such children or grandchildren as shall be dead, and so to the remotest degree, as tenants in common.

3. Persons of equal degree of consanguinity to the ancestor inherit *per capita*, or share and share alike, those of unequal degrees *per stirpes*, or by the right of representation.

4. The inheritance always goes to the next of kin of whatever degree. If any degree is vacant, the persons composing it having died before the ancestor, then the next degree in order inherit in its own right and as next of kin, becoming themselves principals, sharing the inheritance *per capita*, or share and share alike, they being now the next in degree to the ancestor in their own right, and not by the right of representation.

5. The nearest degree remaining in being at the death of the ancestor is always made the basis of distribution. If children are alive, they form the basis, taking *per capita* if children only are alive, taking *per stirpes* if children and the descendants of children are alive. If grandchildren only are alive, the children all having died before the ancestor, such grandchildren as next in degree and of kin are entitled in their own right to the inheritance—become the basis of distribution. They no longer inherit *jure representationis*, but in their own right as lineal heirs and next of kin to the ancestor.

6. The death before the ancestor of all the persons composing a degree operates to advance the next degree in order one step nearer to the ancestor, and to substitute them in the place thus vacated. The death before the ancestor of all the children operates to advance the grandchildren to the first degree from the ancestor and to substitute them in their own right in the places of the children; and the persons thus advanced take equally in their own right, and, upon the death of any of them, his or her children take the share their father would have taken, if alive.

7. Distributees, however far removed in degree from the ancestor, if equal in degree, inherit equally, if unequal in degree, they take *per stirpes*, those equal in degree and nearest in degree to the ancestor taking equal shares in their own right, while those of unequal degrees and one step further removed from the ancestor take only the shares their parents would have taken, if alive. If children and grandchildren are alive, the children take equal shares, and the

Cox *et al. v.* Cox *et al.*

grandchildren the shares of their parents.   If grandchildren only are alive, they take equally as next of kin.   If grandchildren and great-grandchildren are alive, the children having all died before the ancestor, the grandchildren take equal shares and the great-grandchildren what their parents would have taken, if alive.   The first class take in their own right as next of kin.   The latter class take in their representative capacity the shares their parents would have taken, had they survived the ancestor.   2 Cooley's Bl. 218, 517; Walker Am. Law, 346; 2 Kent Com. 422-425; 4 Kent Com. 375; 2 Redfield Wills, 905; Williams Executors, 1348; 1 Bouvier Law Dictionary, 411; *Pond* v. *Bergh,* 10 Paige, 140.

Judge BLACKSTONE says:   " A fourth rule, or canon of descents, is this; that the lineal descendants, *in infinitum,* of any person deceased, shall represent their ancestor; that is, shall stand in the same place as the person himself would have done, had he been living."

" Thus the child, grandchild, or great-grandchild (either male or female) of the eldest son succeeds before the younger son, and so *in infinitum.* And these representatives shall take neither more nor less, but just so much as their principals would have done.   *   *   *   This taking by representation is called succession *in stirpes,* according to the roots; since all the branches inherit the same share that their root, whom they represent, would have done.   And in this manner also was the Jewish succession directed; but the Roman somewhat differed from it.   In the descending line the right of representation continued *in infinitum,* and the inheritance still descended *in stirpes:* as if one of three daughters died, leaving ten children, and then the father died ; the two surviving daughters had each one-third of his effects, and the ten grandchildren had the remaining third divided between them.   And so among collaterals, if any person of equal degree with the persons represented were still subsisting (as if the deceased left one brother, and two nephews the sons of another brother), the succession was still guided by the roots; but, if both of the brethren were dead, leaving

issue, then (I apprehend) their representatives in equal degree became themselves principals, and shared the inheritance *per capita*, that is, share and share alike; they being themselves now the next in degree to the ancestor, in their own right, and not by right of representation. So, if the next heirs of Titius be six nieces, three by one sister, two by another, and one by a third; his inheritance by the Roman law was divided into six parts, and one given to each of the nieces: whereas the law of England in this case would still divide it only into three parts, and distribute it *per stirpes*, thus; one-third to the three children who represented one sister, another third to the two who represented the second, and the remaining third to the one child who is the sole representative of her mother."

The same learned author, on page 517, says:

"Before I quit this subject I must, however, acknowledge that the doctrine and limits of representation laid down in the statute of distributions, seem to have been principally borrowed from the civil law: whereby it will sometimes happen, that personal estates are divided *per capita*, and sometimes *per stirpes;* whereas the common law knows no other rule of succession but that *per stirpes* only. They are divided *per capita*, to every man an equal share, when all the claimants claim in their own rights, as in equal degree of kindred, and not *jure representationis*, in the right of another person. As, if the next of kin be the intestate's three brothers, A., B., and C.; here his effects are divided into three equal portions, and distributed *per capita*, one to each: but, if one of these brothers, A., had been dead, leaving three children, and another, B., leaving two; then the distribution must have been *per stirpes*, viz.: One-third to A.'s three children, another third to B.'s two children, and the remaining third to C., the surviving brother: yet, if C. had also been dead, without issue, then A.'s and B.'s five children, being all in equal degree to the intestate, would take in their own rights *per capita*, viz.: each of them one-fifth part."

Chancellor KENT says: "The first rule of inheritance is, that if a person owning real estate dies seized, or as owner,

without devising the same, the estate shall descend to his lawful descendants in the direct line of lineal descent; and if there be but one person, then to him or her alone, and if more than one person, and all of equal degree of consanguinity to the ancestor, then the inheritance shall descend to the several persons as tenants in common, in equal parts, however remote from the intestate the common degree of consanguinity may be.

"This rule is in favor of the equal claims of the descending line, in the same degree, without distinction of sex, and to the exclusion of all other claimants. Thus, if A. dies, owning real estate, and leaves, for instance, two sons and a daughter, or instead of children, leaves only two or more grandchildren, or two or more great-grandchildren, these persons being his lineal descendants, and all of equal degree of consanguinity to the common ancestor, that is, being all of them either his children, or grandchildren or great-grandchildren they will partake equally of the inheritance as tenants in common."

The same learned author, on page 390, says:

"The second rule of the descent is, that if a person dying seized, or as owner of land, leaves lawful issue of different degrees of consanguinity, the inheritance shall descend to the children and grandchildren of the ancestor, if any be living, and to the issue of such children or grandchildren as shall be dead, and so on to the remotest degree, as tenants in common. But such grandchildren and their descendants shall inherit only such share as their parents respectively would have inherited if living.

"The rule is thus declared in the New York Revised Statutes, and it probably is to be found in the laws of every state in the Union. The rule applies to every case where the descendants of the intestate, entitled to share in the inheritance, shall be of unequal degrees of consanguinity to the intestate. Those who are in the nearest degree take the shares which would have descended to them, had the descendants in the same degree, who are dead leaving issue been living; and

the issue of the descendants who are dead, respectively, take the share which their parents, if living, would have received. It may be illustrated by the following example: A. dies seized of land, and leaves B., a son, living, and D. and E., two grandsons of C., a son who is dead. Here B., the son, and D. and E., the two grandsons, stand in different degrees of consanguinity, and B. will, therefore, under this second rule, be entitled to one-half of the estate, and D. and E. to the other half, as tenants in common. Or suppose A. should leave not only B., a son living, and D. and E., two grandsons by C., who is dead, but also F. and G., two great-grandsons, by H. a daughter of C., who is also dead. Here would be descendants, living in three different degrees of consanguinity, viz.: a son, two grandsons, and two great-grandsons. The consequence would be, that B., the son, would take one-half of the estate; D. and E., the grandsons, would take two-thirds of the other half; and F. and G., the great-grandsons, who take the remaining third of one-half, and all would possess as tenants in common. Had they all been in equal degree, that is, had all of them been either sons, grandsons, or great-grandsons, they would, under the first rule, have inherited the estate in equal portions, which is termed inheriting *per capita.* So that, where heirs are all in equal degree, they inherit *per capita*, or equal portions, and when they are in different degrees, they inherit *per stirpes*, or such portion only as their immediate ancestor would have inherited if living. Inheritance *per stirpes* is admitted when representation becomes necessary to prevent the exclusion of persons in a remoter degree; as, for instance, when there is left a son, and children of a deceased son, and a brother, and children of a deceased brother. But when they are in equal degree, as all, for instance, being grandsons, representation is not necessary, and would occasion an unequal distribution of the estate; and they accordingly inherit *per capita.* This is the rule which prevails throughout the United States, with the exceptions, already noticed, of Rhode Island, New Jersey, North Carolina, South Carolina, Alabama, and

Louisiana; and it agrees with the general rule of law in the distribution of personal property."

In Williams Executors, 1348, the rule is thus lucidly stated: " Secondly, where the intestate's children are all dead, all of them having left children. If a father have three children, John, Mary, and Henry, and they all die before the father, John leaving, for instance, two children, Mary three, and Henry four, and afterward the father die intestate, in that case all his grandchildren shall have an equal share: for as his children are all dead, their children shall take as next of kin. Such also would be the case with respect to the great-grandchildren of the intestate, if both his children and grandchildren had all died before him. In these instances, the parties are said to take *per capita*, or in other words, equal shares in their own right."

Counsel for appellants in their brief concede that the rules above laid down are the general rules of descent in the United States, and that they govern in the distribution of property. They also, in express terms, admit that such general rules were enacted in the Revised Statutes of 1843, and governed the distribution of property in this State up to the enactment of the statute of 1852. But they say that a radical, a revolutionary change came over the legislative mind of 1852; that the policy of the statute of 1843 was neither *per capita* nor *per stirpes*, but embraced both; that the policy of that of 1852 is of descent *per stirpes* in every instance, " save when grandchildren only are left alive," and that thus a radical and revolutionary innovation has been made in this State upon the general rules or canons of descent, as they existed in the most of the states, and those expressly enacted in the Revised Statutes of 1843.

The question arising in the record and presented for our decision is, has the general rule of descent, as it exists in England and in the most of the states, and as expressly enacted by the statute of 1843, been changed by the statute of 1852?

The revised statute of 1843 is rather remarkable in its

nature. It is exceedingly voluminous. It has its separate articles upon descent, dower, courtesy, and the like; while the statute of 1852 seeks to embrace all these and kindred subjects under one chapter. The statute of 1843 is made up of rules, and the legislative construction of them. In one paragraph a rule is laid down, and in the next a construction or interpretation is put upon it. The cases to which it is designed to be applied are specified. It goes into particulars and descends into *minutiæ*. It attempts to provide for every conceivable case, for every contingency which might arise. The legislature was not content with general rules, but engrafted their construction and interpretation upon such rules.

The statute of 1852, on the other hand, only attempts to lay down rules. It neither construes nor applies them. It does not specifically provide for every class of cases, but having declared certain rules and general principles, leaves their construction and application to the courts.

The general rules of descent being as hereinbefore stated, and such rules having been enacted into a law by the statute of 1843, and such having been the unquestioned law and policy in this State up to the enactment of the statute of 1852, nothing but the abrogation of such statute and the enactment of another, in clear and undoubted language, would warrant us in giving to the statute of 1852 the construction contended for by the appellants. If the statute of 1852 will admit of a construction consistent with the general rules of descent and the established policy of the State, that construction should be given to it. So radical a departure cannot be presumed. It must appear in a clear and satisfactory manner. It is said by counsel for appellant to be " a radical and revolutionary change," and in such case the legislative intent to make such a change should be made plainly and clearly to appear. Is such an intent apparent from the phraseology of the statute of 1852? It certainly is not declared in express terms. Then does it arise by implication? General rules, differently worded, but identi-

cal in substance and purport, are enacted. No attempt at legislative construction is made. Only general rules, consistent with the well established rules of descent existing generally in the United States and with the former policy of the State, are laid down, to be interpreted and construed by the courts when doubts arise, and to be applied in cases not specifically provided for, in the light of and in accordance with the established and known rules of descent.

The statute of 1852, like that of 1843, is neither *per stirpes* nor *per capita* purely, but embraces both. When all the heirs or distributees are equal in degree, the rule *per capita* obtains. Whether they be children, grandchildren, or great-grandchildren, does not change the rule. They take under the rule equally, in their own right, as next of kin.

If of unequal degree, the rule *per stirpes* obtains. If children and grandchildren, for instance, are alive, the children form the basis of distribution, the children alive take equal shares, and the grandchildren take the shares their father or mother would have taken, if alive.

The first section provides for a *per capita* distribution to children, when they are all alive. The first clause of the second section provides, that "if any children of such intestate shall have died intestate, leaving a child or children, such child or children shall inherit the share which would have descended to the father or the mother." It is thus provided that when children and grandchildren are the distributees, the children shall take *per capita* in their own right as nearest of kin, and the grandchildren shall take *per stirpes* the share which would have descended to their father or mother. In this instance, the children constitute the first basis of distribution. The section then provides, "and grandchildren and more remote descendants * * * shall inherit by the same rule." That is, that when grandchildren and great-grandchildren are the distributees, the grandchildren shall constitute the first basis of distribution and shall take equally in their own right as nearest of kin, and the great-grandchildren, who are embraced by the phrase "more remote descend-

ants," shall take *per stirpes* the share which would have descended to their father or mother, if alive. If grandchildren and great-grandchildren take by the same rule that children and grandchildren take by, does it not logically and unavoidably result that where grandchildren only are alive, they take equally *per capita* in their own right? It seems to us that this is the fair, reasonable, and only construction which can be placed upon the body of the second section. Let us re-state the several propositions. 1. When children only are the distributees, they take equally in their own right. 2. When children and grandchildren are the distributees, the children constitute the first basis of distribution and take *per capita* in their own right, and the grandchildren take *per stirpes* the shares which would have descended to their father or mother, if alive. The statute, having fixed the rule of distribution as between children and grandchildren, proceeds to declare that "grandchildren and more remote descendants, and all other relatives of the intestate, whether lineal or collateral, shall inherit by the same rule." What rule is here referred to? It must be the rule between children and grandchildren, for none other has been stated. The result must be that when grandchildren are the only distributees, they take *per capita* in their own right, and when grandchildren and great-grandchildren are the distributees, the grandchildren, like the children in the first instance, being the nearest of kin to the ancestor, form the first basis of distribution and take *per capita* in their own right, and the great-grandchildren, like the grandchildren in the first instance, take *per stirpes* the shares which would have descended to their father or mother, if alive.

If this be the true construction of the body of the section, the question arises, what was the necessity for the proviso, which reads: "Provided, that if the intestate shall have left at his death grandchildren only alive, they shall inherit equally?" We answer that there was no necessity for the proviso, as it only declares in express terms what was the plain and obvious meaning of the original section. Then,

why was it adopted? We answer, in the abundance of caution, and probably because it was insisted upon by one who was not a lawyer and did not fully comprehend the force and effect of the accurate legal language employed in the body of the section. An examination of the journals of the House of Representatives of the session of 1852 discloses the facts that "an act regulating descents and the apportionment of estates was introduced by Judge Gookins, formerly a member of this court, and who thoroughly understood the force and effect of the accurate legal language used by him in drafting the second section; that such bill was referred to the joint committee on revision and was reported back from that committee with the proviso, as an amendment to the second section, together with other amendments to other sections of the act. The proviso was added as an amendment to the second section. The proviso is to be regarded as a legislative construction of the body of the section. The purpose would have been better expressed, if it had said: "If the intestate shall have left at his death grandchildren only alive, his children all having died before him, they shall inherit equally as next of kin." This is just what the first and second sections, when construed together, amount to. To give to the proviso the construction and force and effect contended for by the counsel for appellant, would be "a radical and revolutionary change," and would introduce into our system of descent a rule inconsistent with, and repugnant to, the other rules confessedly established by the statute. There must be a basis of distribution, and that basis is generally formed by taking those nearest of kin to the ancestor. It is conceded that when children are alive, they constitute the basis. When the children are all dead, the grandchildren are the nearest of kin and should constitute the basis. To give the statute the construction insisted upon by counsel for appellants, we should have to hold that the grandchildren cannot inherit as next of kin or form the basis of distribution, but we should have to go back to a class or degree, all of whom died before the

ancestor, and upon whom therefore the descent could not in any way have been cast, namely, the children, to find a basis of distribution; in other words, we should have to go back to the children of Abner Cox, all of whom were dead before their father, and divide the estate according to the number of such children. This would change the well settled rule of descent, that the nearest of kin to the ancestor, who are alive at the death of the ancestor, constitute the basis of distribution, who take in their own right, while those in the second degree take by representation. It seems to us that the statute should not receive such a construction. We are of the opinion that the court below placed the correct construction on the statute. But conceding that we are mistaken in holding that the proviso does not modify or change the body of the section, the condition of the appellants would not be bettered, because the case is not brought within the proviso, for the reason that grandchildren only are not left surviving. There were grandchildren and great-grandchildren left surviving the ancestor, and consequently the case does not come within the letter or spirit of the proviso, if it changed the rule of descent as fixed by the body of the section.

The judgment is affirmed, with costs.