## LEONIDAS BALCH *vs.* EBEN F. STONE.

Essex.   November 7, 1888. — March 5, 1889.

Present: MORTON, C. J., FIELD, DEVENS, C. ALLEN, & KNOWLTON, JJ.

*Statutes of Distribution — Descent of Real Estate.*

Under the Pub. Sts. c. 125, § 1, cl. 1 and cl. 5, relating respectively to the descent of the real estate of an intestate, in default of children or surviving brothers or sisters, to his lineal descendants, or to the issue of such deceased brothers and sisters, and providing that "if all such descendants" (or issue) "are in the same degree of kindred to the intestate they shall share the estate equally; otherwise, they shall take according to the right of representation," — the nearest descendants or issue in equal degree of kindred to the intestate are to take *per capita,* and those in more remote degree *per stirpes.*

CONTRACT to recover a distributive share of an estate.   The case was submitted to the Superior Court on an agreed statement of facts, in substance as follows.

In February, 1887, John Stone, of Newburyport, a bachelor, died intestate, leaving at the time of his decease neither father nor mother, nor brother, nor sister, but eighteen nephews and nieces, and five grand-nephews and grand-nieces, and two great-grand-nieces, the issue of four deceased brothers and sisters of the intestate.   The defendant has in his hands, derived from the sale of certain real estate in Newburyport, which was the property of John Stone at the time of his decease, and which he holds as the agent of his heirs at law, thirty-five hundred dollars, less the expenses of said sale, to wit, thirty-two dollars; the plaintiff's share whereof the defendant is ready to pay.

The plaintiff contended that his part thereof, as one of the heirs, is one twenty-first part, amounting to one hundred and sixty-five dollars and fourteen cents; but the defendant contended that the share of the plaintiff, who is a nephew of the intestate, is one ninth of one fourth, or one thirty-sixth part, amounting to ninety-six dollars and thirty-three cents.

The Superior Court ordered judgment for the plaintiff for the larger sum; and the defendant appealed to this court.

*F. Brewster,* (*W. D. Northend* with him,) for the plaintiff.

*E. F. Stone,* (*N. N. Jones* with him,) for the defendant.

MORTON, C. J.   This case depends upon the construction of the fifth clause of the first section of our statute of distribution, which provides that the estate of a person who dies intestate shall descend, " If he leaves no issue and no father or mother, then to his brothers and sisters, and to the issue of any deceased brother or sister by right of representation ; and, if there is no surviving brother or sister of the intestate, then to all the issue of his deceased brothers and sisters.   If all such issue are in the same degree of kindred to the intestate, they shall share the estate equally ; otherwise, they shall take according to the right of representation."   Pub. Sts. c. 125, § 1, cl. 5.

If we regard merely the grammatical construction of this provision, the more obvious meaning would seem to be that where an intestate leaves nephews and nieces, and also grand-nephews or grand-nieces, the nephews and nieces who are his next of kin would take *per stirpes* and not *per capita*.   The pronoun " they " following " otherwise " has no antecedent directly expressed, except " all such issue," and if this is controlling, it would follow that all such issue must take according to the right of representation.   But upon a consideration of the context, and of the history of the legislation upon the subject and of the spirit which pervades it, we are convinced that we cannot adopt this construction without defeating the intention of the Legislature.

The provision in its present form was first enacted by the St. of 1880, c. 219.   It was clearly the purpose of this statute to extend the provisions of the first clause, which apply to lineal descendants, to collateral relations.   The words used are precisely the same, *mutatis mutandis* :   " If all such descendants," or issue, " are in the same degree of kindred to the intestate, they shall share the estate equally; otherwise, they shall take according to the right of representation."   It is clear that this provision in both clauses must receive the same construction. The question in this case is the same as would arise if a man died intestate, leaving as his descendants several grandchildren and also some great-grandchildren, the children of a deceased grandchild of the intestate.   Should such grandchildren take *per stirpes* or *per capita?*   The provision we are considering relating to lineal descendants has been in force in substantially

the same words since the year 1805.  Pub. Sts. c. 125, § 1, cl. 1. Gen. Sts. c. 91, § 1, cl. 1.  Rev. Sts. c. 61, § 1, cl. 1.

The statute of 1805 provides, in substance, that if a man dies intestate his estate shall descend to his children and the lawful issue of any deceased child by right of representation ; if he leaves no issue, to his father; if he leaves no father, to his mother and his brothers and sisters and the children of any deceased brother or sister by right of representation, and if he leaves no issue, father, brother, sister, or mother, then to his next of kin in equal degree, "provided further that, when the issue or next of kin to the intestate who may be entitled to his estate by virtue of this act are all in the same degree of kindred to him, they shall share the same estate equally; otherwise, they shall take according to the right of representation." St. 1805, c. 90, § 1.

In the case of *Sheffield* v. *Lovering*, 12 Mass. 490, decided soon after the passage of this statute, Mr. Justice Jackson, in delivering the opinion of the court, says : " The chief object of the Legislature in this statute, which is understood to have been prepared by the late Chief Justice Parsons, seems to have been, not to establish new rules of descent and distribution, but to adopt and confirm, in clear and explicit language, the legal construction which had been given to the preceding statutes, and which had been considered the law of the country for more than a century."  In regard to the proviso above cited in the statute of 1805, Mr. Dane says that " the last proviso in the first section is according to the former construction."  Dane's Abr. c. 126, art. 1, § 13.

We are justified in assuming that the statute of 1805 was not intended to change the former laws, but was a re-enactment of them.  Looking back at these laws, we find that the St. of 1783, c. 36, which was a substantial re-enactment of the laws of the Colony and Province, provides that, if a man dies intestate, his estate shall descend in equal shares to and among his children and such as shall legally represent them (if any of them be dead), except that the oldest son shall have two shares, " and in every case where children shall inherit by representation, it shall be in equal shares ; and where there are no children of the intestate, the inheritance shall descend equally to the next of kin

in equal degree, and those who represent them, computing by the rules of the civil law, no person to be considered as a legal representative of collaterals beyond the degrees of brothers' and sisters' children." St. 1783, c. 36, § 1.

It is clear that under this statute, if a man died leaving no children but leaving several grandchildren, and also some great-grandchildren, the issue of a deceased grandson, the grandchildren being in equal degree of kindred to the intestate, would take an equal share *per capita*, and the great-grandchildren would take by representation the share which their father would have taken if living at the death of the intestate. We are of opinion that in the statute of 1805, and in the several revisions of the statutes which have since taken place, it was not the intention of the Legislature to change this rule of descent. The policy of our laws is that heirs or next of kin who are in equal degree of kindred to the intestate inherit *per capita* in equal shares, while those in a more remote degree take *per stirpes*, or such portion as their immediate ancestor would inherit if living. *Knapp* v. *Windsor*, 6 Cush. 156, 162. *Snow* v. *Snow*, 111 Mass. 389.

There seems to be no reason for departing from this established policy of equality among the next of kin, and we cannot, unless we are compelled by irresistible reasons, believe that the Legislature intended to destroy this equality among next of kin who are living, because one who would if living be in equal degree of kindred with them happened to die before the intestate, leaving children.

The difficulty in construing the statute arises from the uncertain meaning of the last clause, "otherwise, they shall take according to the right of representation." This provision, which is the same in both clauses, contemplates and was intended to provide for the case where there are some descendants or issue who are of more remote degree of kindred than others who are living, such as where there are grandchildren and great-grandchildren, or nephews and grand-nephews. The purpose is to provide that they shall take by representation, and we think the meaning is the same as if it read, "otherwise," (that is, if there are some descendants or issue of a more remote degree,) "they shall take according to the right of representation."

Section 6 of the same chapter provides that " Inheritance or succession by right of representation shall be deemed to take place when the descendants of a deceased heir take the same share or right in the estate of another person that their parent would have taken if living." Pub. Sts. c. 125, § 6. Now, if the ground taken by the defendant be correct, that, when there are descendants or issue of unequal degree, the nearest descendants or issue who are living are to take *per stirpes* and not *per capita*, the more remote issue could not take by representation as defined by the statute. If the estate is divided *per stirpes*, they would get a different share from that which their parent would have taken if living. There are grammatical and technical difficulties in the way of either construction, but looking at the history and spirit of our legislation we are of opinion that it was the intention of the first clause to provide that, if a man leaves no children, his estate shall descend to all his descendants; all such living descendants as are in equal degree of kindred to take an equal share, that is, *per capita ;* and if there are more remote descendants, they shall take the share which their parent would have taken if living. It was not intended that the rule of representation shall apply to those who were nearest descendants in equal degree, but only to those who are descendants in a more remote degree. This maintains the principle of equality among all descendants of the same degree, living and dead, and gives to the more remote descendants exactly the same share which their parent would be entitled to if living.

As we have before said, the fifth clause must receive the same construction as the first, and it follows in the case at bar that the plaintiff is entitled to recover one twenty-first part of the fund in the hands of the defendant.

*Judgment affirmed.*