ANNIE S. HEALEY, Applt. *vs.* J. ALBERT COLE, Admr.

York.    Opinion April 22, 1901.

*French Spoliation Claims.    Title by Descent.    Next of Kin.* R. S., c. 75,
§§ *1, 8; Acts of Congress, 1891, Mar. 3, 1891; Mar. 3, 1899.*

The appropriation of money for the payment of so-called French Spoliation
claims by the Act of Congress approved March 3, 1899, was a mere gratuity
and payments made from such appropriation were payments as of grace, and
not of right, and Congress had the right to make the gift upon its own terms.

Money paid by the United States in payment of any such claim does not form a
a part of the estate of the original sufferer from the French depredations, but
inures to the benefit of, and is to be distributed among, the next of kin of
the original sufferer living at the date of the passage of that act of Congress.

As Congress prescribed no method for the distribution of money so paid,
it is to be distributed by the proper court and in accordance with the statute
of distribution of the state of the domicile of the original sufferer at the time
of his decease.

In this case, John Storer, the orginal sufferer, at the time of his death had his
domicile in Wells, in the county of York in this State, and the money was
paid by the United States to his administrator de bonis non, who was legally
appointed as such by the probate court of the county of York.  The judge of
probate of that county had, therefore, jurisdiction in the distribution of the
fund in the hands of the administrator de bonis non.

There were living at the date of the approval of the act of Congress as next of
kin of said Storer, five grandchildren and the descendants of eleven deceased
grandchildren.  The judge of probate by his decree of distribution, from
which this appeal is taken, divided the fund to be distributed into sixteen
equal parts, decreeing one-sixteenth to each of the living grandchilden, and
one-sixteenth to the descendants of each of the deceased grandchildren.

*Held;* that such distribution is in accordance with the laws of the United States
and of this state.

*Held;* further, that the appellee, the administrator de bonis non, should be
reimbursed from said fund the expenses incurred by him in this suit, includ-
ing reasonable counsel fees.

Agreed statement.   Appeal dismissed.   Decree of distribution
by probate court sustained.

Appeal from the York county probate court ordering the distri-
bution of a fund in the hands of the defendant as administrator of
the estate of John Storer, deceased, arising from the French Spolia-
tion upon American commerce, prior to 1800.

*J. M. Stone*, for plaintiff.

The 75th chapter of the statute of distribution as amended in 1889 and 1895, § 1, rule 6, is in these words: "If no issue, father, mother, brother or sister, it descends to his next of kin in equal degree. This is the only rule in our statutes providing for the descent of property to the next of kin. The act of Congress itself, evidently specified the rule which is to determine the case. It is evident that rule 2nd of this section is not to determine it, for this rule applies to property of which one dies seized; and to all one's lineal descendants; and where one has a vested interest, and for descent by right of representation; and cannot apply to this case, because all the children of Storer were living at the time of his death. Rule 6 of this statute is to be used and understood in distinction from the cases provided for in Rule 2, and as providing for the case only of those specifically named in it. It is therefore to be literally understood and taken as it reads, and does not provide for the case of all the lineal descendants of John Storer. To read and treat its language in that way would be to render the words next of kin in equal degree meaningless, and in effect obliterate them from the statute. They would then become of no effect. Such a construction in this case would be a complete perversion of the terms of the Act of Congress in making the gift, and would give to one set of heirs what was expressly given to another; they are therefore to be literally understood. We have then only to inquire who the next of kin were under our statutes, and to understand next to mean next or nearest in blood, for the gift in express terms is to them. It took effect on March 3, 1899, and vested in them. The case finds that there were five grandchildren and eleven great grandchildren, and the settled law of Maine covers the case in the plainest and most express terms, giving it to next of kin or grandchildren. In chapter 75 of the statutes, the several rules are distinct and each of them is to be construed separately, and the right of representation does not apply to this rule. "A grand-niece is not related to the deceased in equal degree with nephews and nieces, and unless she is she cannot claim under this rule." *Davis* v. *Stimson*, 53 Maine, 493; *Quimby* v. *Higgins*, 14

Maine, 309; *Cables* v. *Prescott*, 67 Maine, 582; 4 Kent, 412. "A maternal grandmother being of the second degree of kindred, and uncles and aunts of the third, the grandmother must take the property as the rule directs." *Decoster* v. *Wing*, 76 Maine, 456; *Bourne* v. *Lord*, 63 Maine, 386.

*Codman* v. *Brooks*, 167 Mass. 499, appears to us as forced and unreasonable. It requires us in this case to suppose that John Storer, who died January 9th, 1826, was living upon March 3d, 1899, and that all his issue living or dead, or their descendants took, or were entitled to take, under the Act passed at the latter date.

*W. L. Dane*, for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, FOGLER, JJ.

FOGLER, J. This is an appeal from the decree of the judge of probate for the county of York ordering distribution of a fund in the hands of J. Albert Cole, administrator de bonis non of the estate of John Storer, late of Wells in said county, deceased.

The fund in question was paid to the administrator of said deceased in payment of a so-called French spoliation claim under an award made by the United States Court of Claims, and in accordance with the provisions of an act of Congress approved March 3, 1899.

The French spoliation claims arose from the depredations of French cruisers upon our commerce prior to 1800. By the terms of a treaty between the United States and the French Republic concluded September 30, 1800, and ratified on the 31st of July following, our government yielded to the French government all right of the sufferers, from such depredations, to indemnity from that government in consideration that the French government yielded certain claims, asserted by the French Republic, against the United States for failure to perform certain treaty obligations. Although the original sufferers from such French spoliations constantly contended that by such treaty an obligation to indemnify

them rested upon our government, no action was taken by the government towards making indemnity until January 20, 1885, when an act of Congress was approved which provided that claimants for indemnity for French captures and confiscations might apply to the Court of Claims, and that that court should examine and determine the validity and amount of such claims and report to Congress all such conclusions of fact and law as in their judgment might affect the liability of the United States therefor.

The representative of John Storer, the appellee's intestate, presented to the Court of Claims, a claim for indemnity for losses sustained by said Storer, and the court in its report to Congress reported favorably upon the claim.

The advisory report of the Court of Claims having been presented to Congress, that body by an Act approved March 3, 1891, provided for the payment of certain of such claims therein enumerated, and by an Act approved March 3, 1899, provided for the payment of certain other of such claims therein enumerated, among which was the following:

"On the Brig Venus, John Harmon, master, namely John S. Cole, administrator of the estate of John Storer, deceased, ten thousand five hundred and sixty-eight dollars."

That amount was paid by the United States to the present administrator, J. Albert Cole, the former administrator having deceased, and constitutes the fund, the distribution of which is here in controversy.

The two acts of Congress, that of March 3, 1891, and that of March 3, 1899, are identical in terms except as to the enumeration of claims, and each contained the following proviso, namely:

" Provided, that in all cases where the original sufferers were adjudicated bankrupts, the award shall be made on behalf the next of kin instead of to assignees in bankruptcy; and the awards in the cases of individual claimants shall not be paid until the Court of Claims shall certify to the secretary of the treasury that the personal representatives, on whose behalf the award is made, represents the next of kin and the court which granted the administration respectively have certified that the legal representatives

have given adequate security for the legal disbursements of the awards."

The Supreme Court of the United States in *Blagge* v. *Balch*, 162 U. S. 439, in an opinion by Chief Justice Fuller, settled the principal questions arising under the act of 1891, and consequently those arising under the act of 1899.

It is there held that payments under the act of 1891 (and so under the act of 1899) are in the category of payments by way of gratuity, payments as of grace, and not of right.

Congress, therefore, in making the gift, was free to make it to whomsoever it chose and upon whatsoever terms it saw fit. It was there further decided and declared, that the payments authorized by the Act of Congress do not form a part of the estates of the original sufferers to be distributed as such, but are to be distributed as gifts or gratuities among their next of kin who were living at the date of the passage of the Act, and that, as Congress did not provide any method of distribution, the beneficiaries in each case and the amounts payable to each must be determined by the proper court and under the statutes of distribution of the state of the decedent's domicile.

The court in the case cited says: "And we are of opinion that Congress, in order to reach the next of kin of the originial sufferers, capable of taking at the time of distribution, on principles universely accepted as most just and reasonable, intended next of kin according to the statutes of distribution of the respective States of the domcile of the original sufferers. . . . . The object of Congress was that the blood of the original sufferers should take at the passage of the Act. . . . . So that in ascertaining who are to take, the fund, though not part of the estates of the original sufferers, may be treated as if it were, for the purposes of identification merely."

The court of Massachusetts in *Codman* v. *Brooks*, 167 Mass. 499, and of Pennsylvania in *Clements' Estate*, 160 Pa. St. 391, have reviewed at length the case of *Blagge* v. *Balch*, supra, and have adopted and followed the principles there laid down. We must do the same.

In the case at bar the probate court for the county of York has jurisdiction, and it is its duty to make distribution of the fund in the hands of the administrator de bonis non among the beneficiaries, or statutory next of kin of the decedent, John Storer, who were living March 3, 1899, and this is to be done in accordance with the laws of this state governing the distribution of personal estate.

The statutes of this state in accordance with which the fund must be distributed are, R. S., ch. 75, § 1, Par. 1.

" The real estate of a person deceased intestate, being subject to the payment of debts, descends according to the following rules :

1. " In equal shares to his children, and to the lawful issue of a deceased child by right of representation. If no child is living at the time of his death, to all his lineal descendants; equally, if all are of the same degree of kindred ; if not, according to the right of representation."

Section 8 of the same chapter provides, that personal estate shall be distributed, or shall escheat, by the rules provided for the distribution of real estate.

R. S., Ch. 1, § 6, Par. IX. " The word "issue", applied to the descent of estates, includes all lawful lineal descendants of the ancestor."

There were living on March 3, 1899, five grandchildren and lineal descendants of eleven grandchildren of the decedent, John Storer. The probate court by its decree of distribution, from which this appeal is taken, divided the fund into sixteen equal shares, decreeing one share to each of said living grandchildren, per capita, and one share to the lineal descendants of each deceased grandchild who take per stirpes.

We are of opinion that the distribution so decreed is in accordance with the intention of Congress, as construed in *Blagge* v. *Balch*, supra, and with the statutes of distribution of this state, above quoted, and the appeal must be dismissed with costs.

The administrator de bonis non should be allowed his expenses incurred in this suit, including reasonable counsel fees, the amount

to be determined by the judge of probate, and the case is remanded to the probate court for the allowance of such expenses, and for a distribution of the residue of the fund, after the allowance of such expenses in accordance with this opinion.

*So ordered.*