[Civ. No. 12727. First Dist., Div. One. Jan. 24, 1945.]

LOUISE C. MAUD, Plaintiff and Appellant, v. JOSEPH FISKE CATHERWOOD et al., Defendants and Appellants; ETHEL H. CRANE et al., Respondents.

638

Charles W. Slack, Edgar T. Zook, L. V. Edwards, Chickering & Gregory, A. J. Treat and Samuel M. Samter for Appellants.

Gregory, Hunt, Melvin & Faulkner as Amici Curiae on behalf of Appellants.

Perry Evans and Hadsell, Sweet & Ingalls for Respondents.

WARD, J.—This is an appeal from an interlocutory decree in an action for the partition of real property situated in several counties. An agreed statement constitutes the record on appeal.

The parties appearing in the trial court consisted of plaintiff, Louise C. Maud, a grandchild, and named as defendants, certain grandchildren, the trustees for certain other grandchildren, and two great grandchildren, descendants of S. Clinton Hastings, deceased, who at one time was Chief Justice of the Supreme Court of Iowa, and thereafter the first Chief Justice of the Supreme Court of the State of California, and subsequently the founder and benefactor of a California college of the law.

In 1874 Judge Hastings set up a trust *inter vivos* of certain real property for the benefit of himself, his wife Azalea and their seven children. He provided for the termination of the trust upon the death of the last survivor of the beneficiaries. The last survivor was his daughter Ella, who died about sixty-eight years later. The following clause of the trust indenture then became operative: "Upon the death of the last survivor of all the above enumerated beneficiaries, to-wit: the party of the first part, Azalea Hastings, his wife, Marshall, Clara L., Charles F. D., Robert Paul, Flora, Ella and Lillie, the trust herein expressed shall cease, and all the estate, both real and personal, then in the hands of the Trustee, shall be distributed, partitioned and conveyed to the then living lineal descendants of the party of the first part in fee, each of said descendants taking such parts or portions as they would respectively have been entitled to as heirs at law of the party of the first part had he himself been the last survivor of the said beneficiaries last above enumerated."

Four of Judge Hastings' nine grandchildren and two of his great grandchildren survived Ella. They are: Joseph Fiske Catherwood, great grandchild, only son of Charles C. Cather-

## S. CLINTON AND AZALEA HASTINGS

Clara L. (Catherwood) — Marshall — Flora (Keyes) — Charles F. D. — Lillie — Robert Paul — Ella

Jennie S. Catherwood — Charles C. Catherwood — Azalea Lewenhaupt — Hoyt D. Hastings — Seranus C. Hastings — Ethel H. Crane — Harry C. Hastings — Elizabeth Parker Hastings

Louise C. Maud

Joseph Fiske Catherwood — Jan Casimir Lewenhaupt

wood, deceased, one of the three children born to Clara L. Hastings Catherwood; Louise C. Maud, the only surviving child of Clara L. Hastings Catherwood; Jan Casimir Lewenhaupt, great grandchild, the only child of Azalea Lewenhaupt, the only child of Flora Hastings Keyes; Ethel H. Crane, grandchild, the only surviving child of three born to Charles F. D. Hastings; Harry C. Hastings and Elizabeth Parker Hastings, grandchildren, the children of Robert Paul Hastings. The attached chart will serve as a convenience. Thereon the names of the grandchildren are underlined twice; the great grandchildren, thrice.

The trial court divided the estate into four parts and determined the interest of each grandchild and each great grandchild by representation, so that Louise C. Maud, Joseph Fiske Catherwood, Harry C. Hastings and Elizabeth Parker Hastings or their individual trustees were each decreed an eighth interest and Jan Casimir Lewenhaupt and Ethel H. Crane were each decreed a fourth interest. The plaintiff and all of the defendants, with the exception of Ethel H. Crane and Jan Casimir Lewenhaupt appear herein as appellants.

The question presented is at what generation the estate should be divided. Appellants contend that it should be divided into six parts; that is, at the level of grandchildren rather than at the level of children, and that the two great grandchildren should take the shares of their parents by right of representation. Under this method the grandchildren and the great grandchildren would each receive a like amount, namely, one-sixth.

The question must be determined in accordance with the provisions of the trust instrument, and application of Probate Code sections 222 and 250.

The pertinent provision of the trust instrument—the last clause thereof—provides that upon the death of the last beneficiary the trust shall cease and the estate be distributed to the then living lineal descendants of the trustor in such portions as they would respectively have been entitled to "as heirs at law" had the trustor been the last survivor. Appellants note that by the terms of this clause none of the children could possibly take any share of the trust as it was to continue until all of them should have died.

In order to support appellants' theory, which we think untenable, more weight must be given to one particular

clause than to the indenture as a whole, and appellants' construction of that clause adopted. It is contended that the provision that at the time of partition the conveyance to each of the descendants should be in the portions they would have been entitled to as heirs at law "had he himself [the trustor] been the last survivor of the said beneficiaries," is conclusive that the judge had in mind that all of his living grandchildren should take per capita and his great grandchildren per stirpes as the issue of deceased grandchildren. The claim that since by the terms of the trust indenture none of the children of the trustor could take any share of the estate upon distribution, any interests therein given to the grandchildren must be per capita, is likewise not tenable.

It must be admitted that no matter how familiar Judge Hastings may have been with probate statutory provisions in this state and elsewhere, and the judicial construction thereof in 1874, he could not know what changes would take place in the language of the statutes or the interpretation that would be given them at the time of the termination of the trust. The provision, in effect, that the trust should not terminate until the trustor, his wife and all of their children were dead—and that consequently a child could not be a remainderman—is immaterial. The children were well provided for during the term of the trust, and likewise the grandchildren in the event of their parents' death. Judge Hastings specifically provided that the properties in trust should be distributed after his death and the death of his children to the "heirs at law" as though he were the last survivor of the beneficiaries. "The 'heirs' of a person are those whom the law appoints to succeed to his estate in case he dies without disposing of it by will." (*Hochstein* v. *Berghauser*, 123 Cal. 681, 687 [56 P. 547]; *Estate of Jones*, 3 Cal.App.2d 395 [39 P.2d 847].)

Words used in an instrument disposing of one's property "are to be taken in their ordinary and grammatical sense unless a clear intention to use them in another sense can be collected, and that other can be ascertained." (*Estate of Thompson*, 18 Cal.App.2d 680, 684 [64 P.2d 984].) Where an instrument has been drawn by one skilled in the law, the presence of legal technical terms is an indication that the words are to be accepted in accordance with legal definition. (*Estate of Thompson, supra.*)

When the trust instrument is read as a whole it appears that the trustor directed that descendants other than his children should take by right of representation, and of course the portion thus taken by right of representation at the time of the death of the last beneficiary should be determined by the statute then in force. (*Snodgrass* v. *Bedell,* 134 Ohio St. 311 [16 N.E.2d 463].) That Judge Hastings had no intention that his grandchildren should take per capita during the operation of the trust is illustrated by the provision in the instrument that if a child, entitled to a part of the net income ''shall have prior deceased and have left issue yet alive, then such issue to take by right of representation, such share as would have gone to such deceased child had it been then alive.'' The indenture further provided ''. . . and in the event that such issue shall become extinct prior to the decease of the last survivor of all the said children above enumerated, then the shares of such issue to those of the said children surviving such issue, for and during their respective lives with rights of representation to any issue of any other and prior deceased of the said children until the death of the last survivor of the said children above enumerated.'' That clause indicates that the grandchildren should receive by right of representation and not per capita during the operation of the trust. Why there should be a change at the time of distribution from the disposition which prevailed during the operation of the trust, has not been satisfactorily answered by appellants.

The suggestion that Judge Hastings held the grandchildren in high esteem and affection, and that as a matter of sentiment he intentionally worded the trust so that the grandchildren, irrespective of numbers and parentage, should receive the estate per capita is to ascribe to Judge Hastings a knowledge of and fondness for some of his descendants who were not in existence at the time the indenture was executed in 1874. It would have been an easy matter had Judge Hastings intended that his grandchildren should inherit per capita, to use the word ''grandchildren'' instead of descendants. In the absence of a declaration in the trust instrument fixing a different proportion of participation, the grandchildren are entitled to participate by right of representation (*Estate of McCrum,* 97 Cal.App. 576 [275 P. 971]) and not per capita, unless the statute provides otherwise.

The statutes directly controlling are Probate Code sections

222 and 250, which provide respectively: "If the decedent leaves no surviving spouse, but leaves issue, the whole estate goes to such issue; and if all of the descendants are in the same degree of kindred to the decedent they share equally, otherwise they take by right of representation." "Inheritance or succession 'by right of representation' takes place when the descendants of a deceased person take the same share or right in the estate of another that such deceased person would have taken as an heir if living. A posthumous child is considered as living at the death of the parent." We will first consider appellants' contention that under the above Probate Code sections the grandchildren take per capita. There is quite a difference in distributing property to next of kin in equal degree and in distributing the property equally to kin of unequal degree. It is the latter method that must be adopted as applicable to the facts of this case if appellants are to prevail. It is not necessary to consider all of the possible contingencies that may be suggested or that might have arisen had all of the children died leaving issue, particularly if some had only one child and others more than one. Likewise, it is not necessary to consider whether upon the death of the children, all of the nine grandchildren being then living, the grandchildren would have been entitled to share equally irrespective of parentage. We are not presented with such facts. It is sufficient to say that any strict and fast rule providing distribution to the nearest degree of lineal kindred after the first degree, may work out a seeming injustice to a grand, or great grand, or great great, grandchild, depending upon the number of issue and the deaths that may intervene.  We may accept the language of section 222 as directing that the estate be shared per capita if all of the descendants are of equal degree of kindred and we may not question the wisdom of the Legislature in so providing, but likewise we must bow to legislative direction when we are told that if the descendants are not of equal degree of kindred "they take by right of representation." To take per capita all must be in the class or degree of next of kin. (Am.Jur.Cum.Supp. to vol. 16 (Descent and Distribution), § 42.) "Succession to estates is purely a matter of statutory regulation, which cannot be changed by courts." (*Estate of Ingram*, 78 Cal. 586 [21 P. 435, 12 Am.St.Rep. 80].)

There is no direct authority in California on the question

644

involved herein except that of *Estate of Healy,* 176 Cal. 244 [168 P. 124], which deals with collateral kindred. Our statute (§ 222) provides that if there is no spouse, but issue, the whole of the estate goes to such issue to be shared equally, but only in the event that all of the descendants (in this case grandchildren and great grandchildren) are of equal degree of kindred, otherwise they (all of the descendants, the grandchildren and great grandchildren) take by right of representation. ▉ Succession by right of representation as used in section 250 means a substitution of one or more for another in uninterrupted sequence. Once it is determined that descendants are not of equal degree it is necessary to determine the amount each is entitled to per stirpes.

In *People* v. *José Ramon de la Guerra,* 24 Cal. 73, 76, it was·said: "At an early day the common law was adopted as the rule of decision in this state; and the rule of the common law prevails except as to those particulars in which modifications have been made by statute. In the statute relating to descent and distribution, the rule of computation which prevails under the civil law has been adopted; but the statute does not purport to extend the rule beyond the purposes contemplated by that Act." This rule has been followed by statute in this state. ▉ Probate Code, section 252, is specific in presenting a rule to determine the degree of relationship between parent, child and grandchild. It was not contemplated that heirs might hurdle or eliminate a degree for the purpose of obtaining a larger share of an estate. To take ·per capita all lineal relations should be in the class or degree of next of kin. ▉ Per stirpes means taking the share of an immediate ancestor, who·in turn takes the share of his next immediate ancestor and so on until a common ancestor is reached. The theory of permitting descendants of the next of kin to inherit is to give such descendants the part which such next of kin would have received if living. If there is more than one descendant the interest of the next of kin's interest· is divided among those descendants in appropriate fractional parts. Next of kin has reference to next of kin to the decedent, not to an ancestor or descendant of a decedent. (*In re Pearsons,* 110 Cal. 524 [42 P. 960]; *Estate of Way,* 29 Cal.App.2d 669 [85 P.2d 563].) The attached chart is a good example of the necessity of going to the root. ▉ Let us assume that Ethel Crane, a grandchild of Hastings, should die intestate and without husband or issue. Joseph Fiske

Catherwood and Jan Casimir Lewenhaupt are kindred in equal degree to Mrs. Crane but other heirs are not, hence all would take per stirpes and would trace the relationship back to the common root. Upon the death of Ella, a child of Hastings, could it be said that the heirs would take other than as the judge decreed, by going to the family root and designating each interest in accordance with degree of kindred?

In *In re Poindexter's Estate,* 221 N.C. 246 [20 S.E.2d 49] (involving living sisters and representatives of deceased brothers and sisters) the rule was held to be that the distribution is per capita among the next of kin in equal degree and per stirpes among the claimants of unequal degree who take by right of representation as descendants of relatives, who if living would be of equal degree. In 140 American Law Reports 1141, the Poindexter case receives comment as follows: "Pointing out that the statute of descent and distribution provided that an estate should be distributed equally to every of the next kin of the intestate who were in equal degree, and that if one, if living, would be kin in equal degree with survivors, those who represented him should take his share, the court held that the contention made was untenable and founded upon a misconception of the statute, it not being sufficient that the claimants were related to each other in equal degree but to take in their own right they must be among the nearest of kin of the deceased, and that the statutory provision permitting representatives to take was resorted to only when it was necessary to bring the claimants to equality of position as next of kin, and allowed them the share which the ancestor would have taken if living, because, if living, he would be in equal degree with the surviving next of kin. Accordingly, it was held that distribution among such children, nephews and nieces of the intestate, was per stirpes, each stock or group of such children taking respectively the share which the parent would have received if living." The present case involves lineal kin of unequal relationship. The Poindexter case treats of collateral kindred, but the rule applied is based on the same principle. 16 American Jurisprudence, page 806, section 38, in treating of lineal kindred downward, states the rule as follows: "The law divides the property into as many equal shares as there are children and as there are deceased children with surviving

descendants. Each child takes per capita, as it is said, one share. The descendants of each deceased child take per stirpes or by representation, as it is said, and divide among them one share.''

Referring to the manner in which descendants may share in an estate, section 222 uses the word ''they.'' When read in conjunction with the provisions of section 250, namely, ''such deceased person [such child] would have taken as an heir if living'' requires that we start with a child of Judge Hastings. The grammatical propriety of this construction is admitted in the case of *Balch* v. *Stone,* 149 Mass. 39 [20 N.E. 322], mainly relied upon by appellants.

California in some statutes provides for equality among next of kin, and in others equality is ignored and relatives by blood or marriage only take by right of representation. The provisions for per capita distribution where the heirs are designated as next of kin appear in Probate Code, sections 221, 222, 226 and 227. In the above enumerated sections, 226 provides that those who claim through the nearest ancestor must be preferred to those who claim through a remote ancestor. The other sections dealing with a surviving spouse with issue (§ 221) and a minor unmarried decedent (§ 227) provide that the heirs of the same degree share equally ''otherwise they take by representation,'' which is the exact language used in section 222. Where no reference is made to taking per capita, as in the cases of surviving spouse with no issue (§ 223), or no surviving spouse nor issue (§ 225), or neither issue nor spouse, and the estate is community property (§ 228) or under the same conditions and the property is the separate property of the deceased spouse (§ 229), no mention is made of those in the same degree of kindred, but the rule of representation is adopted. Under statutory provisions in this state, there is no strict rule of equality governing the right of succession to property of a deceased, but where equality is provided for it is limited to all heirs in the same degree of kindred to decedent.

In *Estate of Healy, supra* (p. 244), the will left the estate to the grandnephews and grandnieces ''by right of representation.'' The court defined ''by right of representation'' (p. 246), as that which ''occurs when the descendants of a deceased heir take together the same share of the estate of another person that their parents would have taken if living.''

As authority for that statement, Civil Code, section 1403, was cited. That section was the basis of Probate Code, section 250. In the Healy case (p. 246) the court further stated: "We do not perceive any strong reasons for selecting the nephews as the stocks to which said introductory qualifying phrase refers, which do not point with equal or greater force to the selection of the sisters as the point of beginning of lineage intended. . . . [W]herever the relationship of the legatees is such that the rule of descent by right of representation would apply, and nothing appears to indicate a contrary intent, the parties are to take 'by the right of representation' and not *per capita;* or, in other words, that the principle of taking by representation should apply to the dispositions made, in all cases to which it could apply." In *McComas* v. *Amos,* 29 Md. 132 it was held that the English statute of distribution and the rules observed in many of the American states might be wisely followed in Maryland, did not the statute provide otherwise. At page 143 the court said: "And, in this case, while all the parties having a right to take, stand in equal degree of relationship to the intestate, by force of sec. 27 of the statute, they take through the brothers and sisters of the intestate, who are the *stirpes,* and the estate must be divided, amongst those entitled, with reference to the number of such *stirpes.*" (See, also, *Stent* v. *M'Leod,* (S.C.) 2 McCord's Eq. 354; *Inglehart* v. *Holt,* 12 App.Cas.D.C. 68; *In re Swenson's Estate,* 135 Minn. 145 [160 N.W. 253]; *Pond* v. *Bergh* (New York Chancery Rep.), 10 Paige 140.)

It appears to have been impossible to devise a statute which would provide for every contingency satisfactorily to the distributees of an estate. Where there is a provision for succession by right of representation, the equality rule has no effect in the application of the statute. (*In re Swenson's Estate, supra; Inglehart* v. *Holt, supra.*) It may be conceded that circumstances in the birth or death of the children or grandchildren resulting in all succeeding equally, irrespective of whether the succession should be per capita or per stirpes, could have existed, but that condition did not prevail herein at the time of the death of Ella. One great grandchild, Joseph Fiske Catherwood, was the son of grandchild Charles C. Catherwood, one of the three children of a child, Clara L. Hastings Catherwood, whereas Jan Casimir Lewenhaupt is

the child of Azalea Lewenhaupt, the daughter of Flora Hastings Keyes. Each of the two great grandchildren is a descendant in a direct line from ancestor S. Clinton Hastings, each is of equal degree of kindred to the common ancestor but not entitled to the same distributive portion for the simple reason that, as shown by the chart in the "agreed statement," Jan, at the time of distribution, is the only child of an only child of a child of Hastings. On the other hand, in the case of Joseph Catherwood, the grandmother, Clara (child of Judge Hastings) left three children: Jennie, deceased without issue; Charles C., with issue (Joseph), and the plaintiff in this case, Louise C. Maud, the aunt of Joseph, who must share with Joseph as the heir of her deceased brother Charles C. the portion represented by Clara. Descendants may be of equal degree as blood relatives, but not on an equality of inheritance when taking by right of representation.

The direct line of lineal consanguinity which connects and determines ascending or descending relationship is measured by generation or degree from the common ancestor. "Thus, the child is, with regard to the parent, in the first degree; the grandchild, with regard to the grandparent, in the second [degree]; and vice versa as to the parent and grandparent with regard to their respective children and grandchildren." (Prob. Code, § 252.) If the relationship arises through collateral consanguinity the degree likewise is established by counting the degree from the common ancestor (§ 253).

A brief has been filed by counsel as amicus curiae interested in a clause in a somewhat similar trust. In appellants', and in the brief of amicus curiae, certain cases have been cited as authority for the position taken by appellants. Unless the statute in another state is identical with that in this state, decisions rendered thereunder are not controlling, although they may be accorded persuasive force. Appellants' citations are numerous. The following are sufficient to show that they are not in point and are based upon statutes of other states providing in substance for the kind of distribution contended for by appellants; statutes with different provisions, for instance, a provision in effect that if grandchildren only should be alive they shall inherit equally irrespective of the number of children. (*Cox* v. *Cox*, 44 Ind. 368; see, also, *Brown* v. *Taylor*, 62 Ind. 295.) In *Ball* v. *Ball*, 27 Grattan (Va.) 325, the statute expressly provided that those of the same degree

should take per capita, and if part were dead and part living "the issue of those dead shall take per stirpes." *In re Martins Estate,* 96 Vt. 455, holds at page 456 that "The right to succeed to the property of an ancestor is not a natural right . . . but a 'gift of the law.' '' In construing the statute providing " 'In equal shares to the children of said deceased person or the legal representatives of deceased children' '' the court declared (p. 458) that "the effect is the same as if the statute read 'in equal shares to the descendants of such deceased person'—the clause providing, for representation applying only when inequality of relationship exists." In the present case inequality of relationship exists. Differences in facts and in statutory provisions of other states and this state exist also in *Von Overbeck* v. *Dahlgren,* 28 F.2d 936.

*Snodgrass* v. *Bedell,* 134 Ohio St. 311 [16 N.E.2d 463] is a fair sample of appellants' authorities. In that case Martha Smith was the intestate. The statutes had been enacted at various times. The court said (p. 465 [16 N.E.2d]) : "Paragraphs 7 and 8 of Section 10503-4, General Code, now clearly provide that, in event distribution is to be made either to grandparents or their lineal descendants, the estate is to be divided equally into halves. One half portion would be distributed or descend to those on the paternal side, and the other half portion to those on the maternal side of the intestate. If there be no descendants on one side then the other which would have descendants of grandparents would inherit more than one-half. Only in event that there be neither grandparents nor lineal descendants of grandparents on both sides would the next of kin of the intestate inherit." It was held that descendants, whether lineal or collateral, of equal degree of consanguinity of the respective paternal and maternal grandparents, took per capita and not per stirpes, and the descendants of those of the same degree whose parents were dead took per stirpes. Under the circumstances a relative in the fourth degree obtained 1/28 and on the maternal side a relative in the fifth degree received ⅛, which is in part another illustration of seeming unfairness depending upon the death of relatives.

In support of appellants' position, Vernier's American Family Laws, section 239 is cited. Attention is particularly called to the following paragraph on page 114: "In the absence of express statutes on this subject, it is usually consid-

ered that the grandchildren take in their own right under the general statutes of descent and distribution and do not 'represent' their deceased parents.'' This rule, according to the author, applies to ''lineal descendants'' of the same degree of kindred to the intestate ''if not, the usual rule of representation applies to the issue of deceased descendants.'' Without supporting citation or an analysis of the probate section, California is listed as following this rule, but the author notes that ''the problem is more often than not one of construction of indefinite, ambiguous statutes.''

Appellants' line of decisions headed by *Green* v. *Hussey,* 228 Mass. 537 [117 N.E. 798] may at first reading seem to be in point as the Massachusetts statute is similar to that of California. In that case the court held that the essential words of the will followed the statute and that the statute, having been construed in *Balch* v. *Stone, supra,* and followed in other cases, no sufficient reason was advanced why the previous decisions should not be followed. The only Massachusetts case necessary to analyze is *Balch* v. *Stone, supra,* since all other cases from that state followed the Balch case without further discussion of the soundness of the rule. In Massachusetts there was some historical background to follow. This is not true in California. No previous decision in this state has followed the construction adopted in Massachusetts and the decision itself seems to admit its impropriety. In the Balch case, the court said (p. 42) : ''We are of the opinion that in the statute of 1805, and in the several revisions of the statutes which have since taken place, it was not the intention of the legislature to change this rule of descent. The policy of our laws is that heirs or next of kin who are in equal degree of kindred to the intestate, inherit *per capita* in equal shares, while those in a more remote degree take *per stirpes,* or such portion as their immediate ancestor would inherit if living.'' But, at page 40, the court also said: ''If we regard merely the grammatical construction of this provision, the more obvious meaning would seem to be that where an intestate leaves nephews and nieces, and also grandnephews or grandnieces, the nephews and nieces who are his next of kin would take *per stirpes,* and not *per capita.* The pronoun 'they,' following 'otherwise,' has no antecedent directly expressed, except 'all such issue,' and if this is controlling, it would follow that all such issue must take according to the right of representa-

tion." It appears that in the Balch case the court gave the statute the construction which the court thought the Legislature intended instead of following and construing the language of the statute. *Healey* v. *Cole,* 95 Me. 272 [49 A. 1065] is also cited. Maine was merely following the interpretation given by its mother state in *Balch* v. *Stone, supra.* The error appearing in the Massachusetts cases does not require that we should likewise adopt an incorrect interpretation.

█ Finally, appellants urge that sections 222 and 250 should be construed to make the provision "fair." Undoubtedly appellants mean fair as applied to their view of the facts and the law of this case. If there is unfairness in the rule, we are reminded that " 'Succession to estates is purely a matter of statutory regulation, which cannot be changed by courts.' " (*Estate of Nigro,* 172 Cal. 474 [156 P. 1019].)

Death and birth in varying numbers may change the amount of the share to which a relative may succeed to an estate. In view of the possibility of a seeming unfairness, under any rule there should be less claim of injustice if there is followed the requirement that the right of inheritance of a representative descendant should be fixed by reference to the first generation common to each as the criterion to determine the degree of relationship of subsequent relatives in the descending line.

The right to succeed to an interest in an estate of a deceased is not a natural right but one bestowed by law and accordingly subject to statutory authority. (*Estate of Perkins,* 21 Cal.2d 561 [134 P.2d 231].) It appears that Judge Hastings adopted the California probate statutes which means that he directed that the trust should be distributed according to the statutes in force at the termination of the trust.

The trust indenture and the statutes in force covering the facts in this case require that the interlocutory decree entered on December 20, 1943, be affirmed. That is the order.

Peters, P. J., and Knight, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 22, 1945.