### DAHLGREN v. PIERCE et al.*

(Circuit Court of Appeals, Sixth Circuit. January 17, 1921.)

No. 3291.

1. **Wills ⬲439—Intention given effect, if lawful.**

In construing a will, the court is required to ascertain the testator's intention and to give effect to his intended disposition of the estate, if that is lawful.

2. **Wills ⬲470—Intention gathered from language of entire will.**

The intention of testator must be ascertained from the entire will, but must be extracted from the language used by him, and not by conjecture based upon extraneous facts.

3. **Wills ⬲81—Unlawful portion of scheme of disposition disregarded.**

If the disposition intended by testator is not lawful, the court will follow his scheme of disposition, so long as that is consistent with the rules of law, and, when that consistency ends, will distribute the property according to the rules of law.

4. **Wills ⬲682(1)—Child of deceased grandchild held entitled to share income.**

Under a will giving testator's property to trustees, to hold during the lives of testator's daughter and two grandchildren, and to pay the in-

---

⬲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied and appeal dismissed 254 U. S. —, 41 Sup. Ct. 534, 65 L. Ed. —.

come in equal shares to them, with provision that, if the daughter shall remarry and die leaving issue by a future marriage while either of the two grandchildren survive, the income should be, during the continuance of the trust, equally divided among all the children of testator's daughter, the children living when that contingency happened did not constitute a fixed class entitled to the property, since it was not then to be finally distributed, so that the share of one of those children who died leaving a son is to be paid to the son during the continuance of the trust.

**5. Perpetuities** <span>&copy;</span>4(1)—**Lives in being not limited to beneficiaries.**

Within the rule against perpetuities, invalidating an estate unless it must vest within a life or lives in being and 21 years thereafter, plus the usual fraction, the lives in being need not be those who are entitled to take the property.

**6. Perpetuities** <span>&copy;</span>4(21)—**Income of trust not a perpetuity may be shared by child of person unborn at testator's death.**

Where the trust created by the will was to terminate at the death of the survivor of three living persons, so that it was not a perpetuity, the payment of a share of the income of the trust to a son of an after-born grandson of testator does not violate the rule against perpetuities.

**7. Perpetuities** <span>&copy;</span>4(21)—**Statute restricting devises of realty does not apply to bequests of income therefrom.**

Gen. Code Ohio, § 8622, prohibiting gift of an estate in lands or tenements except to persons in being or their immediate descendants, does not apply to a bequest of the income from lands and tenements devised in trust, nor the payment of such income to the child of a grandson born after testator's death.

**8. Trusts** <span>&copy;</span>271½—**Distribution of corpus not determined in proceedings as to right to income.**

In proceedings to determine the right to share in the income from a trust estate, the rights to share in the corpus after the termination of the trust will not be determined, since the persons interested in the distribution of the corpus may not be the persons then before the court, and the interests of the parties, if not mere expectancies, are only contingent interests.

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Supplemental and ancillary bill by Ulrica D. Pierce, trustee under the will of Samuel F. Vinton, deceased, against John V. Dahlgren, Jr., and others. From an order of the District Court, the named defendant appeals. Reversed and remanded.

This is the second chapter of this appeal. After the first opinion herein (263 Fed. 841) was filed, and before a mandate thereon was issued, the parties stipulated that "the case may be decided by the court upon the present record, the appellees withdrawing their petition for rehearing, and appellant waiving the objection that the order of the District Court, entered January 23, 1915, for service under section 57 of the Judicial Code [Comp. St. § 1039], was not served upon him until after the date fixed by said order for him to appear and plead, and withdraws that ground of his motion, filed April 7, 1917, to set aside said service, and agrees that the court may consider and determine the appeal upon the record with the same effect as if said order had been served in time, as provided therein." This stipulation was approved by the court.

Some additional facts need to be stated to present clearly the questions of law now decided. Samuel F. Vinton, the testator, died in May, 1862. He had lately been domiciled in Ohio, but was then domiciled in Washington, D.

C. His will is dated the 31st day of March, 1862. He owned real estate in Washington, D. C., in Iowa, and in Ohio, but the larger part of his estate is derived from Ohio land. His will in part provides as follows:

"And I do hereby further constitute and appoint the said Charles B. Goddard the trustee of the estate, both real and personal, hereinafter devised and bequeathed to him to hold the same for the uses and trusts hereinafter declared.

"And I do hereby devise unto the said Charles B. Goddard, his heirs and assigns for the said uses and trusts hereinafter declared, all of the real estate wheresoever situated and not hereinbefore devised, which I now own, or may die seized and possessed of in law or equity.

"And I do hereby further give and bequeath unto the said Charles B. Goddard, as such trustee, all of the railroad bonds, railroad, bank and other stocks and securities of which I may die possessed, or which may be purchased by said executor as above directed. * * *

"It is my will and direction that the trustee, for the time being of said trust estate, shall manage and take care of all of said estate held in trust under any provision of this will, and collect and receive the rents, interest, dividends and income arising therefrom, and after paying out of the same all taxes, and necessary charges of managing and keeping the property in repair, including his own compensation to be allowed yearly by the proper court as hereinafter provided, he shall dispose of the residue, or net annual income of said trust estate, in the manner, and for the purposes and uses following; that is to say, he shall during the joint lifetime of my said daughter, Sarah Madelaine Goddard, and her two children, Romaine Goddard and Vinton Goddard, annually, and if practicable, semiannually, or quarterly, pay one-third part of the whole of such net annual income to each of them for their maintenance and support.

"But if my said daughter shall die leaving no issue by a future marriage, her said two children surviving, or if either of said two children shall die leaving no lawful issue the other child and my said daughter surviving, then in such case, the whole of said net annual income shall be thereafter equally divided between the two survivors during their joint lives; and if one of said two remaining survivors shall die leaving no lawful issue, then the whole of said net annual income shall thereafter be paid over to the sole survivor during his or her natural lifetime. But if said Vinton Goddard and Romaine Goddard, or either of them, shall die leaving lawful issue, then there shall be paid to such issue of him or her during the continuance of this trust, the share of said net annual income that would have been paid to their deceased parent if living. And if my said daughter shall die leaving lawful issue by a future marriage, said Romaine and Vinton Goddard, or either of them surviving her, then and in that case, the said net annual income shall be, during the continuance of said trust estate equally divided among all the children of my said daughter, share and share alike, the surviving children of my said daughter to take per capita in making the distribution of said income, and the issue of such children as may be deceased shall take per stirpes. My object in creating the trusts of this will being to provide usual support, during their several lives, for my said daughter, and her two children, Romaine Goddard and Vinton Goddard, I do hereby declare that so soon as my said daughter and her said two children shall have all died, the trust estate hereinbefore created shall cease and determine; and the said trust property, both real and personal, is herein and hereby devised and bequeathed to, and shall then be conveyed and distributed to and among such of the lawful issue and descendants of my daughter, their heirs and assigns in fee as would in law be entitled to the same, if I had lived until the death of my said daughter and of said Romaine and Vinton Goddard, and had myself died intestate. And it is my will and direction that the trustee, for the time being of said trust estate, shall, at the expiration of said trust, make, execute and deliver to the parties that may, under the last foregoing devise and bequest, be entitled thereto, all and every such transfers, assignments, conveyances in fee and other instruments in writing, as may be necessary and proper to carry into full effect the foregoing provision for the

last and final disposition of said trust property, both real and personal."

Other provisions of the will do not aid in construing it and need not be quoted. Provision is made therein for the successive appointment of trustees. In the event of the refusal of Charles B. Goddard to accept the trust or to appoint a successor in the manner provided in the will, or in case of his death without making such appointment of another trustee, or his inability to act, it is provided that "the court within whose proper jurisdiction and duty it may be to see that the trusts herein created are put into execution, shall appoint a trustee and renew the appointment as often as need be." Goddard having died without appointing another trustee, the original bill herein was filed pursuant to this clause in the court below April 6, 1864. The trustees thus appointed by the court are by the will made subject to the court's orders and directions, and are required to file annual reports with the court. It is further provided that, "before the court is called upon to approve the same, the trustee shall give to all the parties interested herein, due and reasonable notice in writing or such other mode of personal service as said court may direct, that he has placed said report on file of the court—that the same is open to inspection and that on the day specified in said notice, he will move the court to approve of and confirm said report."

The testator left surviving him his widowed daughter, Sarah Madelaine Goddard, hereinafter referred to as Madelaine, and her two children, Romaine Goddard and Vinton Goddard. Madelaine in 1865 was remarried to Admiral John A. Dahlgren. Of this marriage were born three children, Eric B. Dahlgren, Ulrica Dahlgren (now Pierce), and John V. Dahlgren. Vinton Goddard died unmarried and without issue in 1877. Madelaine died May 28, 1898. John V. Dahlgren died August 10, 1899, leaving surviving him John V. Dahlgren, Jr., the appellant herein, who was born June 26, 1892. Romaine Goddard married Baron Gustav von Overbeck, and is still living, being the last survivor of the three persons living at the time of the testator's death, during which the trust created by the will should continue.

"The controversy on the merits involves the right of John V. Dahlgren, Jr., to participate in the distribution of income during the continuance of the trust. The several contentions on this proposition are sufficiently stated in the opinion. When John V. Dahlgren, Sr., died, and the right of his son to participate in the income first arose, Evan J. Jones was trustee. His first report, filed May 22, 1900, shows payment of $2,044.49, a full share of the net annual income, to Eric B. Dahlgren, guardian of John V. Dahlgren, Jr. Notices were given and accepted by Ulrica D. Pierce, Romaine von Overbeck, and Eric B. Dahlgren, both individually and as guardian of John V. Dahlgren, that this annual report had been placed on file and would stand for hearing on the 1st day of July, 1900, "or as soon thereafter as counsel can be heard." On January 31, 1901, a decree was entered showing that a hearing was had on this report, and reciting that notices had been served on and acknowledged by the said beneficiaries, and ordering that the report be approved and confirmed. Jones made in all four annual reports similar in form, and of which like notices were given and upon which like hearings were had and orders of confirmation made. Martin F. Morris, his successor as trustee, who was appointed December 29, 1903, filed three annual reports with respect to which like proceedings were had. Ulrica D. Pierce, his successor and the present trustee, who was appointed January 21, 1907, has filed six annual reports and one special report with respect to which like proceedings were had. Nearly all of these reports show that a full, proportionate share of the income was paid to Eric B. Dahlgren as guardian of the appellant. Prior to October, 1910, royalties from coal lands in Ohio had accumulated in the hands of the trustee in the sum of $115,000. Upon application to the trustee, and after hearing, it was held and decreed that these royalties thus accumulated were income subject to distribution, and were in fact distributed in the same manner, after notice, to all the beneficiaries, and the special report showing this had been done was approved by a decree formally entered.

The present trustee, Ulrica D. Pierce, filed, October 20, 1913, the supplemental bill referred to in the former opinion. It is upon this bill that the

present controversy has arisen. It raises for the first time any question of the right of John V. Dahlgren, Jr., to participate in the annual distribution of income. Briefly stated, the relief sought is a construction of the will, and particularly a determination as to whether or not the appellant had at any time, or has now, or will have at any time, any interest in or right to any part of the trust estate, and if the finding is that he has not, that his guardian may be required to pay back to the trustee for proper distribution the income previously paid to him. The appellant had then arrived at full age, but his guardian still had possession of all income previously received.

Lawrence Maxwell, of Cincinnati, Ohio (Joseph S. Graydon, of Cincinnati, Ohio, and Coudert Bros., of New York City, on the briefs), for appellant.

J. Warren Keifer, of Springfield, Ohio (Keifer & Keifer, of Springfield, Ohio, on the briefs), for appellees.

Before WARRINGTON and DENISON, Circuit Judges, and WESTENHAVER, District Judge.

WESTENHAVER, District Judge (after stating the facts as above). [1-3] Our first task is to construe this will. This requires us merely to ascertain the testator's intention, and, if his intended disposition of his estate is lawful, to give effect to it. This intention must be ascertained from a consideration of the entire will, but must be extracted from the language used by the testator, and not by conjecture based upon extraneous facts. If the disposition intended by the testator is not lawful, then, as has been well said, the court—

"will follow the scheme of the testator so far and so long as that scheme is consistent with the rules of law, and when that consistency ends, the law seizes hold of the property, and distributes it according to its own rules." Dayton v. Phillips, 28 Wkly. Law Bul. 327, 330.

The will devises and bequeaths all the testator's property, real and personal, to trustees, to be held by them during the life of Madelaine, Romaine, and Vinton Goddard, or the last survivor of them, all of whom were persons in being at the time the will was made and when the testator died. Power is conferred to convert, sell, and reinvest, but no direction so to do is given, such as would operate as an equitable conversion of land into money. The title is vested in the trustees during the longest life of these three persons, and is then to vest and be transferred and conveyed. In the meantime the annual income only is to be distributed. Our present inquiry has to do with the intended disposition of that annual income.

Three contingencies appear to be provided for in distributing this income. The first has to do with the distribution to Madelaine, Romaine, and Vinton Goddard, during their joint lives, and is an equal distribution. The second has to do with the distribution of the income, if Madelaine dies without leaving other issue by a future marriage, and for the distribution in the event either Romaine or Vinton shall in the meantime die without issue. The third has to do with the distribution in the event Madelaine shall remarry and shall die leaving issue by a future marriage. It is this third contingency which has actually happened. The language of the will providing for this contingency is as follows:

"And if my said daughter shall die leaving lawful issue by a future marriage, said Romaine and Vinton Goddard, or either of them surviving her, then and in that case, the said net annual income shall be, during the continuance of the trust of said estate, equally divided, among all the children of my said daughter, share and share alike, the surviving children of my said daughter to take per capita in making the distribution of said income, and the issue of such children as may be deceased shall take per stirpes."

The contention of the appellees is that a class of beneficiaries is created by this clause, and that this class is to be ascertained and is finally closed as of the date of the death of Madelaine. The class thus ascertained, and if finally closed, would consist of the testator's four living grandchildren, Romaine, Ulrica D., Eric B., and John V., Sr., being all the surviving children of Madelaine. If Vinton, who had previously died, had left children, or if any of these four had died before Madelaine, leaving issue, that issue would become members of the class and take per stirpes. Consequently it is argued that, once this class of beneficiaries is ascertained and closed, it does not open to let in other persons, and that, inasmuch as there is no devise or bequest over on the subsequent death of any member of the class, the issue of such deceased member does not participate, but those remaining in the class take thereafter during the continuance of the trust the entire income. In support of this contention are cited numerous authorities holding that the members of the class who are to take are presumed to be those who answer the description at the time the event happens upon which depends their right to participate, and that upon the death of any member of the class, and if there was no bequest or devise over of that member's share the survivors take the entire estate.

[4] This construction of the will is plausible and not unsupported by considerations of substantial weight. It is not, however, in our opinion, a correct exposition of the will, or a correct determination of the intention of the testator. If the class were to be ascertained for the purpose of vesting the estate, or of making distribution of the corpus of the fund, the authorities cited, as well as certain settled rules of construction, might require us to assent to this contention; but our primary duty is to ascertain the testator's intention without regard, at this time in the discussion, to whether or not his intended disposition is lawful. The testator had in mind, it seems to us, a continuing distribution of the income until the last survivor of three living persons should die. He intended that income to be divided annually, and, if practicable, semiannually, or quarterly, throughout that entire period. He did not have in mind the ascertainment and final closing of a class of beneficiaries at specific times or upon definite contingencies. He realized the probability, if not the certainty, that some one or more of the beneficiaries would die during that period. His intended scheme of distribution seems obviously to provide for equality in distribution, first to his daughter and two grandchildren then living, during the life of his daughter, taking care of the contingency of either of his living grandchildren dying in the meantime with or without issue; and, second, on the death of his daughter, equally to all of his grandchildren, including grandchildren by a future

marriage of his daughter, taking care, also, of the contingency of the death, during the continuance of the trust, of any one of them dying leaving issue. This scheme of equal distribution, it seems to us, was intended to operate throughout the entire period, and to be applied each year to the situation then existing, in making distribution, having regard continuously to changes produced by death. The words "issue of such children as may be deceased shall take per stirpes" are not to be limited to the situation as it existed on the death of his daughter. They are rather to be applied to the situation as it existed from year to year in making annual distributions. The words "as may be deceased" are not to be construed as if they read "as may then be deceased." They are referable to the direction to distribute annually rather than to the death of Madelaine.

Upon a consideration of the whole will, as well as of this specific clause, such seems to us to have been the testator's obvious intention. The scheme of disposition provided at the termination of the trust supports this conclusion. The trustees are then to transfer and convey the estate to all the living issue and descendants of his daughter. It seems improbable that he intended in the meantime to drop out some of his daughter's descendants, whom he was so careful to bring back for a full and equal share in the corpus.

Nor are we impressed with the view of the learned District Judge, nor with the argument made here, that the "testator's solicitude was exclusively for his daughter and her Goddard grandchildren, his grandchildren whom he knew and loved, and only incidentally and contingently extended to other of his grandchildren, if it should so happen that his daughter would marry again." In support of this view, reliance is placed on the expression in the will:

"My object in creating the trusts of this will being to provide usual support during their several lives for my said daughter and her children, Romaine Goddard and Vinton Goddard."

This expression does not, it seems to us, support, much less require us to adopt, that view. This expression was used not in connection with the distribution of the annual income or the persons who were to take it, but in connection with the termination of the trust and for the purpose of giving greater certainty to the time when it was to terminate. The language of the will, particularly the clause disposing of the income after the death of his daughter, discloses no intent to discriminate against any of his grandchildren or their issue. The only discrimination against his grandchildren by his daughter's future marriage is during the life of his daughter. In this period they do not participate in a distribution of the income. On the death of his daughter, all of them are brought in. They are then placed on a footing of exact equality with his other grandchildren, and nothing appears to indicate any intention that they or their issue should thereafter be treated differently. The share of the Goddard grandchildren is cut down by bringing them in at that time. It is not probable that the testator had in mind increasing that share by the subsequent death of any of the Dahlgren grandchildren.

270 F.—33

Our conclusion is that the testator's intention was, and that the true interpretation and construction of this will are, that on the death of the testator's ·daughter all of his grandchildren then living, and the issue of such as were dead, were entitled to participate in the income, and that annually thereafter from time to time, as any one should die leaving issue, that issue becomes entitled to participate in the distribution per stirpes throughout the continuance of the trust estate.

Our next task is to determine whether this intended scheme of distribution is unlawful. One contention of the appellees is that it comes in conflict with the common-law. doctrine of perpetuities, in that it would be a limitation' of the estate to the unborn issue of a person unborn at the testator's death. This contention, it seems to us, is based upon a misapprehension either of the terms of the will or of the law. The entire estate, real and personal, as has been said, was devised, and bequeathed to trustees. It is to be held in trust by them during certain lives then in being, and it is to vest at the death of the last survivor. The trust·thus created was not one for accumulation, but to provide the usual support during the several lives of such living persons. The estate is not tied up or made inalienable, except during the period of lives then in being. This offends against no rule of law known to us or to which our attention has been called.

[5] Whether the common-law rule as to perpetuities is in force in Ohio, or what it is in Ohio, except as found in the Act of December 17, 1811, now section 8622, G. C., seems not to have been declared by any decision of its Supreme Court. Certainly no rule has been declared by decision different from the general doctrine. That general rule is familiar. No bequest or devise is good unless it must vest, if at all, not later than 21 years and the usual fraction after some life or lives in being at the death of the testator; if it must vest within that period, then it is good. Gray on Perpetuities, § 201; Dayton v. Phillips, 28 Wkly. Law Bul. 327; McArthur v. Scott, 113 U. S. 382. 5 Sup. Ct. 652, 28 L. Ed. 1015. This doctrine was invented by the courts to meet the new device of executory devises and springing uses. By this doctrine the testator may select any number of living persons as fixing the period during which the vesting of an estate may be postponed. Peter Thelusson, whose will gave rise to the famous case of Thelusson v. Woodford, 4 Ves. Jr. 227, selected all his children, grandchildren, and great-grandchildren living at the time of his death, who were 14 (page 236) in number. This doctrine has reference exclusively to the time during which an estate may be tied up, or, in other words, to the time within which it must vest, and not to the right of any person to enjoy the same in the meantime. As was said by Mr. Justice Gray in McArthur v. Scott, 113 U. S. 383, 5 Sup. Ct. 663, 28 L. Ed. 1015:

"The rule of the common law, by which an estate devised must in all events vest with a life or lives in being and 21 years afterwards, has reference to time and not to persons. Even the 'life or lives in being' have no reference to the persons who are to take, for the testator is allowed to select, as the measure of time, the lives of any persons now in existence; and the '21 years afterwards' are not regulated by the birth of the coming of age of

any person, for they begin, not with a birth, but with a death, and are 21 years in gross, without regard to the life, or to the coming of age, of any person soever." [1]

[6] This being so, the appellees' contention comes down merely to this: The testator may not, under shelter of the legal period within which an estate may be tied up, direct a payment by the trustees in the meantime of any part of the income to an unborn child of a person not in being at the testator's death. We have been cited to no case which, rightly considered, so holds. The application of this rule depends upon the possibility, not upon the actual fact. It would be surprising if, under wills like that of Peter Thelusson, it did not often happen that some unborn child of a person not then in being might come into life and participate before the end of the life or lives in being and 21 years afterwards. In Fitchie v. Brown, 211 U. S. 321, 29 Sup. Ct. 106, 53 L. Ed. 202, the will was construed to show an intent that the income was to be distributed annually to more than 40 annuitants until 21 years after the death of the last survivor, and in case any annuitant died during the period his heirs were to be substituted. Upon final distribution, the corpus was to be divided among those who were then annuitants. It is plain that the child of a person unborn at the testator's death not only might, but probably would, be found among the eventual annuitants and the final distributees. The trust was held valid, though the effect of this remoteness was not urged. In trusts for accumulation, the entire income may be tied up and paid to no one, provided the final period of vesting or distribution does not violate this rule against perpetuities. This is so obvious that it is assumed as the starting point of all discussions whether particular trusts for accumulation are good. Gray on Perpetuities, § 671; Thorndike v. Loring, 15 Gray (Mass.) 391; 30 Cyc. pp. 1477, 1478, note 67. Certainly, if the final vesting of the estate is not postponed beyond the permitted period, and if in the meantime income need not be distributed at all, the testator may direct such interim disposition of it as he sees fit, unless it comes in conflict with section 8622, G. C.

An examination has been made of the authorities cited in support of appellees' contention. In the brief, Gray on Perpetuities, § 375a, and Coggins' Appeal, 124 Pa. 10, 16 Atl. 579, 10 Am. St. Rep. 565, appear to be relied upon as most nearly in point. In order to make clear our view and to disclose why the cases cited are not in point, we shall refer more at length to the case last mentioned. In that case the testator had bequeathed his estate in trust for the benefit of his wife and children. At the death of his wife, the trustees were to distribute the net income to each of his four children during their respective lives. Upon the death of any one of his children the trustees were to pay that child's share of the corpus to his children who have attained or shall attain the age of 25 years. The case turned on the point as to whether the estate vested in the grandchildren at the death of

[1] It is worthy of note that the will considered in this case was written by the testator, Samuel F. Vinton.

the testator's children, with the enjoyment in possession merely postponed until they should become 25 years of age, or whether the vesting was postponed until they had reached the age of 25 years. In the former event the court's view was that the disposition would not violate the rule against perpetuities, but in the latter event it would, because of the possibility that a longer period than 21 years and a fraction might elapse after the death of the persons in being at the testator's death before the estate vested. It is only because the court was of opinion that the testator intended to postpone the vesting until the end of the 25-year period that the testator's disposition failed. It is clear that, had he postponed it only for 21 years, the disposition would have been sustained. In determining whether the testator intended the estate to vest at the death of his children, with the enjoyment of it in possession only postponed until their children should become twenty-five years of age, it is intimated that if during the intervening period provision had been made for the payment of income, and the corpus only was to be retained and distributed at the end of the 25-year period, a contrary conclusion would have been reached. Thus this case, like all others that we have examined, shows that the rule has nothing to do with the persons who are to take or enjoy, but only with the period during which the vesting is postponed. The policy of the law is to forbid tying up of estates for a longer period than a life or lives in being and 21 years and the usual fraction. It is only when it appears from the provisions of the will that the vesting of the estate cannot happen within that period of time that the disposition fails.

Nor does the rule of Whitby v. Mitchell, 44 L. R. Chan. Div. 85, have any application. It has to do exclusively with the feudal doctrine relating to the creation and limitation of estates in remainder in real estate, which require intervening particular estates to support the remainder. It forbids the creation of a remainder in real estate limiting a possibility upon a possibility; that is, a remainder to the unborn issue of a person unborn at the time the estate is created. It has never been applied to executory devises such as we are now dealing with and to meet which the doctrine of perpetuities was invented. Furthermore, it is much criticized by English judges, and is said not to be the American rule on the subject. In re Clark's Settlement, 1 L. R. Chan. Div. 467 (1916).

The testator's disposition is also said to be void because in conflict with the Ohio statute against perpetuities (Act December 17, 1811, now section 8622, G. C., cited in the margin).[2]

The contention is that John V. Dahlgren, Jr., is not the immediate issue or an immediate descendant of a person in being at the time this will was made, because his father was born after the testator's death, and outlived his mother, Madelaine, and died at a later time.

---

[2] Sec. 8622. No estate in fee simple, fee tail, or any lesser estate, in lands or tenements, lying within this state, shall be given or granted, by deed or will, to any person or persons but such as are in being, or to the immediate issue or descendants of such as are in being at the time of making such deed or will; and all estates given in tail shall be and remain an absolute estate in fee simple to the issue of the first donee in tail.

In this view, John V. Dahlgren, Sr., is the immediate issue of Madelaine, the person in being at the testator's death, and John V. Dahlgren, Jr., is her remote issue or descendant. As a result, it is contended that no annual income can be distributed to John V. Dahlgren, Jr., without violating the statute above quoted. If this be true, it is needless to observe that the same result would follow with respect to the issue of Ulrica D. Pierce and Eric B. Dahlgren, if either of them should die before Romaine. In support of this proposition (that John V. Dahlgren, Jr., is not immediate issue or descendant) are cited Dayton v. Phillips, 28 Wkly. Law Bul. 327, affirmed on another ground, and for a different reason, Phillips v. Herron, 55 Ohio St. 478, 45 N. E. 720; McArthur v. Scott, 113 U. S. 340, 383, 5 Sup. Ct. 652, 28 L. Ed. 1015; Stevenson v. Evans, 10 Ohio St. 307; Turley v. Turley, 11 Ohio St. 173.

[7] Whether these authorities support this contention, or hold what is claimed for them, or just what is the true meaning of this section, we deem it unnecessary to decide in disposing of any matter now before the court. This statute is expressly limited to estates in lands or tenements. It has no application to personalty; nor, in our opinion, has it any application to the gift or bequest of a share in the annual income. All the estate in these lands is devised to the trustees. They are invested with the title thereto in fee simple upon certain trusts. At the time fixed for terminating these trusts the real estate, including the proceeds of any that has been sold, and the corpus of the personalty, are bequeathed and devised to certain persons. The question now put arises, if at all, only at the termination of the trust. No estate in lands is in the meantime devised to the testator's grandchildren or to their issue. What is given them is a gift or bequest of income coming into the hands of the trustees. If the period during which the vesting of the estate is postponed does not violate the rule against perpetuities, as we have found it does not, so likewise this section is not violated by a direction to the trustees to divide the income in their hands annually which might have been lawfully accumulated during the entire period and divided only at its termination.

[8] No determination will or should now be made as to the devolution of the trust estate after the death of Romaine. No decision on this point was made by the court below, for the reason that it would be premature so to do in advance of her death. We concur in this view. A sufficient reason therefor is that the persons now before the court may not be the same persons who will be interested therein at the death of Romaine, and a decision now upon that proposition would not bind the persons who might then be the interested parties. The interests therein of the persons now in court, if more than an expectancy or a mere chance that they may be the persons then interested, is at most only a contingent interest. Sinton v. Boyd, 19 Ohio St. 30, 2 Am. Rep. 369; Richey v. Johnson, 30 Ohio St. 288, 294; Barr v. Denney, 79 Ohio St. 368, 87 N. E. 267.

The conclusion to which we have come renders unnecessary any consideration or decision of the contention made and earnestly pressed upon us on behalf of appellant that the decrees made from time to

time upon the annual reports of the trustee operate as a bar against the appellees, or that in any event payments heretofore made with the approval of the other beneficiaries are voluntary payments, made under a mistake of law and not of fact, and cannot be recovered back.

The decree of the court below will be reversed, with costs to the appellant, and the cause remanded for further proceedings in conformity herewith.