**VON OVERBECK et al. v. DAHLGREN et al.**

**DAHLGREN v. VON OVERBECK et al.**

Circuit Court of Appeals, Sixth Circuit. November 9, 1928.

Nos. 4981, 4982.

Carl Lehmann, of Cincinnati, Ohio (James H. Cleveland, of Cincinnati, Ohio, on the brief), for the von Overbecks.

Joseph S. Graydon, of Cincinnati, Ohio, for John V. Dahlgren, Jr.

John David Lannon, of New York City, and Robert L. Black, of Cincinnati, Ohio, for Lucy D. Dahlgren and others.

Before DENISON, MACK, and MOORMAN, Circuit Judges.

MACK, Circuit Judge. The present proceeding arose in the District Court on motion by the trustee for instructions as to final distribution of the trust estate created under the will executed in 1862 by Samuel Vinton, a distinguished Ohio lawyer, resident then and at the time of his death in 1864 in Washington, D. C. This trust has been continuously administered under the direction of the District Court. The trust estate originally included lands in Ohio and in the District of Columbia, a contractual interest in Iowa lands, and personalty. Vinton's surviving descendants were his widowed daughter, Madelaine Goddard, and her two children, Romaine and Vinton Goddard. The will provided:

"My object in creating the trusts of this will being to provide usual support, during their several lives, for my said daughter and her two children, Romaine Goddard and Vinton Goddard, I do hereby declare that as soon as my said daughter and her said two children shall all have died, the trust estate hereinbefore created shall cease and determine; and the said trust property, both real and personal, is herein and hereby devised and bequeathed to, and shall then be conveyed and distributed among such of the lawful issue and descendants of my said daughter, their heirs and assigns in fee as would in law be entitled to the same, if I had lived until the death of my said daughter and of said Romaine and Vinton Goddard and had myself died intestate."

Vinton Goddard died in 1877 without issue. Madelaine, after marrying Admiral Dahlgren and bearing him three children, died in 1898. One of these three Dahlgren children died in 1899, leaving a son, John V. Dahlgren, Jr. The other two died in 1922 and 1925, respectively, the one leaving eight children, the other leaving one child and two children of a theretofore deceased child. This latter group may be called the Dahlgren claimants. Romaine Goddard died in 1926; her two children, the von Overbeck claimants, survived her. At that time, when, under the recited terms of the trust, distribution thereof was to be made, the then surviving descendants of Madelaine were one child of her son John V. Dahlgren, eight children of her son Eric Dahlgren, one child and two children of a deceased child of her daughter, Ulrica Dahlgren Pierce, and two children of Romaine von Overbeck, her daughter.

The trustee was authorized to sell the real estate, but, except perhaps in the case of the Iowa lands, was not peremptorily directed to sell. Such sales were to be made "in the same manner as is, or may be required, by the law of the place where the land so sold is situated, in the case of a sale by an administrator of any intestate's real estate for the payment of debts of the intestate"; and the proceeds of such sales were to be invested in securities. During the existence of the trust, the trustees sold the Iowa and Washington lands, and part of the Ohio lands, pursuant to this power, and invested the proceeds as directed.

Section 8622 of the General Code of Ohio, which has been continuously in force since 1811, provides: "No estate in fee simple, fee tail, or any lesser estate, in lands or tenements, lying within this state, shall be given or granted, by deed or will, to any person or persons but such as are in being, or to the immediate issue or descendants of such as are in being at the time of making such deed or will. * * * *" The common-law rule against perpetuities was and is in force in the District of Columbia and Iowa.

The District Court, in successive decrees applying to the securities and to the realty remaining unsold, instructed that the corpus of the trust should be divided into 13 shares, for distribution of 1 share to each of the then surviving 12 grandchildren of Madelaine and 1 share jointly to the 2 children of a deceased grandchild. The decrees are appealed from by the von Overbecks and by John V. Dahlgren, Jr.

The von Overbecks contend that the proceeds of the lands sold should be treated as realty; that, if the will were construed to devise realty to all of the 14 descendants, the devise would be void in part under section 8622; that Vinton, being an able Ohio lawyer, knew this, and must therefore have intended a devise to only such descendants as could lawfully take under section 8622; and that the von Overbecks alone can so take. They contend, secondly, that, even if the provision be construed as a devise to all the descendants of Madelaine, the distribution should be per stirpes; that such devise of a one-quarter share to the von Overbecks (as representing one of Madelaine's four children) is valid,

despite the invalidity as to the other devisees, so that the von Overbecks should in any event receive one-quarter plus one-quarter of the resulting intestate three-quarters. Thirdly, they contend that, if the whole devise be deemed invalid, the von Overbecks are entitled to one-quarter of the intestate property by reason of a distribution per stirpes, and that this applies also to the personal property.

John V. Dahlgren, Jr., contends for the distribution of one-quarter to each line of Madelaine's four children, on the ground that, the intended distribution at Romaine's death to all the then descendants being invalid under section 8622, the intent to benefit all of Madelaine's descendants should be effectuated as far as possible, by deeming the equitable remainders in the trust estate as vested in her children on Madelaine's death. The Ohio statute, it is further contended, should be applied by analogy to personal property with similar results.

■ This court in Dahlgren v. Pierce, 270 F. 507, declined to pass upon the devolution of the estate after Romaine should die, even though all the parties who could have taken, had she then died, were before the court. "A sufficient reason," it was said, "is that the persons now before the court may not be the same persons who will be interested therein at the death of Romaine, and a decision now upon that proposition would not bind the persons who might then be the interested parties. The interests therein of the persons now in court, if more than an expectancy or a mere chance that they may be the persons then interested, is at most only a contingent interest."

While the refusal to decide the matter in that case might have been based upon the ground of the court's discretion to postpone a decision so as not to bind parties until they can have their own day in court instead of merely by representation, and while, therefore, we might not feel bound by the views then expressed, we nevertheless, on full consideration, reaffirm the conclusions then stated that the remainders did not vest before the death of Romaine. Since the devise and bequest were to such issue as would take if testator died intestate immediately after the last life tenant, the beneficiaries were necessarily undetermined until that time; the death of the last life tenant was thus made the time not merely for distribution, but for determination of the distributees. Richey v. Johnson, 30 Ohio St. 288; Barr v. Denney, 79 Ohio St. 358, 87 N. E. 267; Thorndike v. Loring, 15 Gray (Mass.) 391. In McArthur v. Scott, 113 U. S. 340, 5 S. Ct. 652, 28 L. Ed. 1015, and Bolton v. Bank, 50 Ohio St. 290, 33 N. E. 1115, on the other hand, the remainders were vested.

■ Since testator directed distribution after the death of the life tenants as if he had then died intestate, and since the intestacy laws of the District of Columbia, as well as of all the states where any of the property was situated, provide for distribution in equal shares to all those of equal degree claiming in the place of an ancestor, the distribution must be in 13 equal shares, 1 for each of the 12 then surviving grandchildren of Madelaine, and 1 to be subdivided between the 2 then surviving children of a deceased grandchild.

■■ The question remains whether the remainders are valid under the applicable law governing perpetuities. The common-law rule prevails in the District of Columbia, which was the place of domicile, and in Iowa. Since final distribution would have to take place on the death of a person in being at testator's death, there was clearly no violation of the common-law rule. The law of the domicile determines the validity of the disposition of personalty, and no question as to the original personalty can therefore arise.

■ The trustees had the fullest power to convert the real estate; when converted, it was to be and was invested, not in real, but in personal, property, securities. Equitable conversion, and other fictional doctrines invoked to conceal the true nature of property in order to effectuate a testator's intent, are inapplicable to such a situation. It is no objection that trustees were thus given a power to change the possible devolution of property by their own discretionary acts after testator's death; a power of appointment is no different. We are, too, entirely clear that the reference in the will to the Ohio statute, under which, if a sale be made for the purpose of paying debts, the proceeds remaining after such payment are to be distributed as realty, was solely for the purpose of pointing out the forms to be followed in a sale by the executors; it was not intended thereby to compel a distribution of personalty, the proceeds of real estate sold, not to pay debts, but solely in the exercise of a discretionary power, as if it were still realty, perhaps half a century or more after the sale.

■ The validity of the disposition of the unsold Ohio lands is, however, to be determined under section 8622; it is unnecessary to consider whether such realty should be dealt with as part of an entire mass of property, which for purposes of distribution tes-

tator chose to have regarded as personalty. Section 8622 is a limitation upon persons who may take. The decisive question is as to the meaning of "immediate," in the statutory phrase "the immediate issue or descendants of persons in being at the time of making the will." If the Connecticut statute, after which the.Ohio statute was modeled, had been construed in Connecticut before its adoption in Ohio, that construction would doubtless be followed by the Ohio courts, and by this court. But no significant Connecticut case prior to 1811 has been cited to or found by us. The later Connecticut decisions are not persuasive, in view of the difference between the Ohio and the Connecticut interpretations of the statutes in other somewhat analogous cases. Thus, it is settled in Ohio, contrary to Leake v. Watson, 60 Conn. 498, 21 A. 1075, that a grandchild whose parent has died *before* the grandparent, the person in being at testator's death, is an immediate descendant of that grandparent and may take. Turley v. Turley, 11 Ohio St. 173.

Madelaine and Romaine were in being "at the time of making the will" of Vinton. The von Overbecks, as Romaine's immediate issue, clearly come within the statutory class. At Madelaine's death, her four surviving children, Romaine and the three Dahlgrens, were her "immediate" issue. At the date of vesting none of them survived. The word "immediate" is clearly appropriate to designate the nearest living lineals, no matter how many generations removed. In the absence of decisive Ohio authority, we hold that the time for determining "immediacy" within this statute is the date of vesting, not the date of Madelaine's death.

The contrary construction of section 8622 contended for by appellants, under which only the immediate descendants of Madelaine as of the time of her death could take, would not advance the purpose of this statute, which is to compel the vesting of property not later than the end of a life in being. It would not shorten the time within which the vesting would have to take place. The statute may at least equally well bear the far more reasonable construction that testator may create an estate for life, and provide that upon its termination the property shall be distributed among all those who *as of that time* would be the immediate descendants of some person living when the will was made. There is nothing in the decision of McArthur v. Scott, 113 U. S. 340, 5 S. Ct. 652, 28 L. Ed. 1015, to the contrary.

As here applied, all of Madelaine's grandchildren living at Romaine's death—that is to say, the two von Overbecks, the nine Dahlgrens, the one Pierce, and jointly the two children of the deceased Pierce grandchild, would therefore take per capita as Madelaine's then "immediate" descendants.

Decrees affirmed.