## MORROW v MORROW, Admr, Etc

Ohio Appeals, 2nd Dist, Shelby Co

No 92.   Decided Nov 5, 1934

Berry & McCulloch, Piqua, for plaintiff in error.

Taylor Cummins, Sidney, and R. E. Boller, Jr., Sidney, for defendant in error.

**OPINION**

By BARNES, J.

The sole and only question for determination is as to whether the property passes to these nieces and nephew per stirpes or per capita. If per capita, ecah would receive one-fifth; if per stirpes, then, on the theory that the brother and sisters are the "root," the estate would be divided into thirds, of which the nephew, George B. Morrow, would receive one-third, the niece Elsie Lane, one-third, and the nieces, Mary Lillie Walburn, Alverta Simmons and Leota McKnight, would divide the remaining one-third.

The following pertinent sections of the General Code are controlling, and so much thereof as bears on the line of descent is quoted in full.

Sec 10503-4, GC, in the first paragraph reads as follows:

"STATUTE OF DESCENT AND DISTRIBUTION. When a person dies intestate having a title or right to any personal property, or to any real estate or inheritance in this state, such personal property shall be distributed, and such real estate or inheritance shall descend to parties in parcenary, except as otherwise provided by law, in the following course:"

The next pertinent part of the above section of the Code is Subdivision 6, and reads as follows:

"6. If there be no spouse, no children, or other lineal descendants, and no parents surviving, to the brothers and sisters, whether of the whole or the half blood of the intestate or their lineal descendants per stirpes."

Sec 10503-7 GC, reads as follows:

"SEC 10503-7 GC. DESCENT WHEN ALL DESCENDANTS OF EQUAL DEGREE OF CONSANGUINITY. When all the descendants of an intestate, in the direct line of descent, are on an equal degree of consanguinity, to the intestate, whether children, grandchildren or great grandchildren, or of a more remote degree of consanguinity to such intestate, the estate shall pass to such persons of equal degree of consanguinity to such intestate in equal parts, however remote from the intestate such equal and common degree of consanguinity may be."

It is admitted, if **Subdivision 6 of §10503-4, GC,** is accepted as the sole controlling enactment, that the estate would descend per stirpes. It is likewise apparent, if §10503-7, GC, is controlling, that then the estate would pass per capita.

Our attention is called to the first paragraph of the above §10503-4, GC, wherein it is claimed that the use of the following words "except as otherwise provided by law" necessarily invoke §10503-7, GC, wherein the provisions of Subdivision 6, supra, are modified.

It is a well-recognized rule of statutory construction that all language used in each and every enactment must be considered to have a purpose, and courts, in considering statutory enactments, if possible must ascertain the legislative intent from the language used.

Applying this principle, we must make

the inquiry as to what is meant by the words "except as otherwise provided by law."

It may be difficult to understand why the Legislature would not have adopted a phraseology that would have in one section definitely and positively controlled the descent of property, and if they had done so the words "except as otherwise provided by law" would have been unnecessary. This same observation might apply to Subdivisions 1, 2, 3 and 9.

On the other hand, it might, with equal force, be urged that in the interest of brevity §10503-7, GC, where the facts warrant, is given application by reason of the phrase "as otherwise provided by law" to various subdivisions of said §10503-4, GC.

It is not the province of the court to pass on choice of methods, but rather to construe the language according to its plain, ordinary meaning. Applying this rule, we are constrained to the conclusion that all the subdivisions of said §10503-4, GC, must yield to any other existing enactment modifying or changing such subdivision.

There is no inherent right to inherit property. It is a privilege granted by statute. The heir gets only what the law says he may receive. **Ohio Jur., Volume 14 (Descent and Distribution) §5, page 97.**

From the above well-recognized principle of law, it must follow that the Legislature when they used the words "except as otherwise provided by law," had reference to other legislative enactments. In §10503-7, GC, we find a contrary provision. In other words, the Legislature herein "otherwise provided by law."

Counsel for plaintiff in error urge that §10503-4, GC, is a more recent enactment than that of §10503-7, GC. In this we can not concur for the reason that Volume 114, pages 320, 339, 341, Ohio Laws, discloses that both sections were passed at the same time and became effective January 1, 1934.

It is true the context of §10503-7, GC, in substantially the same form as the present enactment has been the law of Ohio since 1805, whereas §10503-4, GC, is a very substantially modified form from any previous statute of descent and distribution. Both sections were a part of the same act, and hence must be considered in "pari materia."

We think the same conclusion should be maintained even if the two sections were not enacted at the same time. Repeals by implication are not favored and where two affirmative statutes exist one is not to be construed to repeal the other by implication unless they can not be reconciled by any mode of interpretation. **Railway Company v Pace, 68 Oh St, 200.**

As we view the question, the two statutes are readily reconcilable.

We find no error in the judgment of the lower court.

The petition in error will be dismissed at costs of plaintiff in error.

Exceptions will be allowed.

HORNBECK, PJ, and KUNKLE, J, concur.