**RYAN v DIXON et**

Ohio Probate Court, Franklin Co

No 82023. Decided June 6, 1938

Max Mayer, for administrator.

Edw. Moriarity, Columbus, for maternal uncle.

**OPINION**

By McCLELLAND, J.

This is an action for a determination of the heirs of Edward W. Dixon, deceased, and more particularly for a determination of the respective interests of such heirs in the estate of said decedent. Said decedent died intestate January 29, 1938.

We find and determine that the heirs as set forth in the petition are the only heirs of the said decedent. Such heirs consist of one uncle on the maternal side of the decedent; and on the paternal side there are three uncles, one aunt and nine children of a deceased uncle.

Counsel for the administrator claims that the estate should be distributed per capita, that is, that it should be divided in six parts, one part to each uncle and aunt and one part to the children of the deceased uncle. Counsel for the one uncle on the maternal side claims that the estate should be divided in half, half going to his client on the maternal side and the other half going over to the paternal side of the decedent.

In support of his position counsel for the administrator claims that §10503-4, subsection 8, GC is controlled by the provisions of §10503-7 GC. He calls attention to the fact that §10503-4, GC, by its very terms, excepts from its operation cases "otherwise provided by law" that this case is one of the exceptions provided for, and that it comes within the provisions of §10503-7 GC.

Since the sole question in this case involves the construction of these two statutes, we will set them forth. We copy §10503-4 GC as set forth in the session laws (§116 O. L. 385), showing he amended portion emphasized, this statute having been amended May 14, 1935:

"STATUTE OF DESCENT AND DISTRIBUTION. §10503-4 GC. When a person dies intestate having title or right to any personal property, or to any real estate or inheritance in this state, such personal property shall be distributed, and such real estate or inheritance shall descend and pass in parcenary, except as otherwise provided by law, in the following course: * **

"7. If there be no such brothers or sisters or their lineal descendants, * * * one-half to the paternal grandparents of the intestate equally, or to the survivor of them, and one-half to the maternal grandparents of the intestate equally, or to the survivor of them.

"8. If there be no paternal grandparent or no maternal grandparent then such one-half to the lineal descendants, if any, of such deceased grandparents, per stirpes: if there be no such lineal descendants, then to the surviving grandparent or grandparents or their lineal descendants, per stirpes; if there be no surviving grandparents or their lineal descendants, then to the next of kin of the intestate. * * * There shall be no representation among such next of kin."

"Sec 10503-7 GC. DESCENT WHEN ALL DESCENDANTS OF EQUAL DEGREE OF CONSANGUINITY. When all of the descendants of an intestate, in a direct line of descent, are on an equal degree of consanguinity to the intestate, whether children, grandchildren or great-grandchildren, or of a more remote degree of consanguinity to such intestate the estate shall pass to such persons of equal degree of consanguinity to such intestate in equal parts, however remote from the intestate such equal and common degree of consanguinity may be."

It is common knowledge among the bench and bar that §10503-4 GC, which was a part of the 1932 Probate Code, was amended by the Legislature to abrogate the rule laid down in Oakley v Davey, 49 Oh Ap 113 which case held that there was nothing in the statute as originally enacted indicating an intention that an estate shall be divided equally between the paternal and maternal branches. In fact it was the court itself in that case that made the suggestion as to how the statute might have been amended, if such were the intention of the Legislature, when it said:

"If such had been the intention, the Legislature might well have stated that one-half should go to the paternal grandparent or grandparents, or their lineal descendants, per stirpes, and one-half go to the maternal grandparent or grandparents, or their lineal descendants, per stirpes."

The similarity of the suggested wording of the statutes and the wording subsequently employed by the Legislature, in the amendment it adopted, is quite apparent. Particular attention should be called to the wording of sub-section 8:

"8. If there be no paternal grandparent or no maternal grandparent, then such one-half to the lineal descendants, if any, of such deceased grandparents, per stirpes;".

The words "such one-half" refer to each one-half of the estate, which is set apart by the previous sub-section to each set of grandparents, and each set of grandparents is designated in the statute by the words "such deceased grandparents." Sub-section 8 carries each one-half, so set apart, down through the lineal descendants of each set of grandparents.

It is our opinion that the language employed by the Legislature is clear, and that it divides the estate in halves, one-half going to the paternal side and one-half going to the maternal side. In so doing the Legislature undertook to establish an entirely new and separate line of descent where the decedent left no closer relatives than grandparents or their lineal descendants. The cleavage of the estate into two separate moieties is so strongly marked by the language employed that these moieties cannot be reasonably be fused or commingled by going back to the provisions of §10503-7 GC. In this situation the provisions of

§10503-7 GC will have to yield to §10503-4 (8) GC, the latter being an amendment to the 1932 Probate Code and special in its nature.

If we should hold that §10503-7 GC controls §10503-4-(8) GC, to be consistent, we would be forced to hold that it would also control §10503-4 (7) GC in a case where decedent might leave three of his four grandparents living, all being of equal degree of consanguinity to the intestate. This of course would be an impossible construction in view of the explicit terms of sub-section 7. Since the amendment of §10503-4 GC is so irreconcilably in conflict with §10503-7 GC that the two sections cannot ▆▆▆▆▆ be harmonized in order to effect the purpose of the amendment, the amendment operates as an implied repeal of §10503-7 GC to the extent of the irreconcilable inconsistency. 37 Oh. Jur. p. 395, §135 and cases cited.

But it is stated by counsel for the administrator, that, when §10503-4 GC was amended, the Legislature, as part of the same enactment, also amended §10503-9 GC, which section provides for a per stirpes distribution among heirs of unequal degree, in order to make it conform to §10503-4 (8) GC as amended, but left wholly untouched §10503-7 (GC). Counsel then asked why if a repeal of §10503-7 GC is to be implied, did not the Legislature, which was so careful to amend §10503-9 GC, amended also §10503-7 GC.

The purpose of the amendment to §10503-9 GC was to correct an inconsistency between this section and §10503-4 (8) GC as they were originally enacted in the 1932 Probate Code. §10503-4 (8) GC as originally enacted, provided for a per stirpes distribution among the next of kin of the intestate, in conformity to §10503-9 GC, and at the same time provided that "There shall be no representation among the next of kin." The amendment of §10503-4 (8) GC, in addition to dividing the estate in halves between the paternal and maternal branches, corrected also this error in this section of the statutes, and the only purpose of the Legislature in amending §10503-9 GC was to make it conform to the correction made in the amendment to §10503-4 (8) GC. There is nothing however, in the amended portion of §10503-9 GC which affects the descent to the lineal descendants of grandparents.

Counsel have been unable to find any reported cases in which this question has been raised under the 1935 amendment to §10503-4 GC. Our attention has been called to the case of McKinney v Abbott, 49 Tex.

371 which involved the construction of a statute similar to ours in that the statute divided the estate half between the paternal side and half between the maternal side, but did not limit the estate to the descendants of grandparents but allowed for a more remote descent. In that case the nearest of kin on the one side were lineal descendants of grandparents, and on the other were lineal descendants of great-grandparents. The lineal descendants of the grandparents on the one side claimed the entire estate because the statute, after dividing the estate in equal moities, makes no further reference to the two estates thus created, but proceeds to state how the estate, as if it were but one, shall descend and be inherited, concluding with the direction that it shall go to the "nearest lineal ancestors, or their descendants, or to such of them as there be." The court after calling attention to this last part of the statute says:

"If this had been said to be the course of each one of the two estates, made by dividing the inheritance into moities, it would have been more plain as to what was meant. Still, it is more reasonable that such was its meaning than that there should be no division of the inheritance when the kindred happened to be nearer on one side than on the other, which, it must have been known, would very often happen."

In the above case the court approves and follows James v Barnett, 30 Tex. 638, in which case the court, in its opinion, says of the statute:

"In this portion of the statute, there is no doubt in our minds it was the intention of the legislature to destroy effectually all discrimination or distinction between the relations on the father's side and those on the mother's side."

And in the syllabus:

"By this provision, ipso facto, two estates are created for different objects, with no bond of union, except through the intestate;"

While the statute interpreted by the Texas court is different from ours, yet a reading of those cases shows how that court looks upon a statute which makes an equal division of the estate between the paternal and maternal branches of the family of the intestate.

Just recently (May 7, 1938) we had occasion to interpret §10503-5 GC, the "half and half" statute, in the light of §10503-7

GC. The case presented a somewhat similar question, and we held there that each one-half of the property passing under the "half and half" statute is to be treated as separate and distinct from the other, and that the relatives of one spouse can have no interest in the half going to the relatives of the other spouse. The case we refer to is that of Schwagert, Admr. v Vitzhum, No. 81153 (26 Abs 442).

We therefore conclude that the estate is to be divided in halves, that the one half shall go to the one uncle on the maternal side, he being the only lineal descendant of the maternal grandparents; and that the other one-half shall be divided in 5 equal parts, one part to go to each of the three uncles and the one aunt, and the fifth part to be divided equally between the children of the deceased uncle, they being the only lineal descendants of the paternal grandparents.