By the Court.
 

 The question presented is one of the construction of the provisions relating to the descent of real estate under Section 10503-4, General Code, as amended, effective September 2, 1935 (116 Ohio Laws, 389).
 

 Martha C. Smith having died intestate, the right to share in her personal property and real estate is controlled exclusively by the statutes in force at the time
 
 *314
 
 of her death on October 26, 1936. The provisions applicable are as follows:
 

 “Sec. 10503-4. When a person dies intestate having title or right to any personal property, or to any real estate or inheritance in this state, snch personal property shall be distributed, and such real estate or inheritance shall descend and pass in'parcenary, except as otherwise provided by law, in the following course:
 

 “7. If there be no such brothers or sisters or their lineal descendants, one-half to the paternal grandparents of the intestate equally, or to the survivor of them, and one-half to the maternal grandparents of the intestate equally, or to the survivor of them.
 

 “8. If there be no paternal grandparent or no maternal grandparent, then such one-half to the lineal descendants, if any, of such deceased grandparents,
 
 per stirpes;
 
 if there be no such lineal descendants, then to the surviving grandparent or grandparents or their lineal descendants,
 
 per stirpes;
 
 if there be no surviving grandparents or their lineal descendants, then to the next of kin of the intestate. There shall be no representation among such next of kin.
 

 “9. If there be no next of kin, to stepchildren or their lineal descendants,
 
 per stirpes.
 

 “10. If there be no stepchildren or their lineal descendants, escheat to the state of Ohio.”
 

 “Sec, 10503-7. When all the descendants of an intestate, in a direct line of descent, are on an equal degree of consanguinity to the intestate, whether children, grandchildren or great-grandchildren,
 
 or of a more remote degree of consanguinity to such intestate,
 
 the estate shall pass to such persons of equal degree of consanguinity to such intestate in equal parts,
 
 however remote from the intestate such equal and common degree of consanguinity may be.”
 
 (Italics ours.)
 

 “Sec. 10503-8. If some of the children of such intestate are living, and others are dead, the estate shall
 
 *315
 
 descend to the children who are living, and to the lineal descendants of such as are dead, so that each child of the intestate who is living will inherit the share to which he or she would have been entitled if all the children of the intestate were living, and the lineal descendants of the deceased child or children of the intestate inherit equal parts of that portion of the estate to which such deceased child or children would be entitled if such deceased child or children were living.”
 

 “Sec. 10503-9. The provisions of the next preceding section shall apply in all cases in which the descendants of the intestate,
 
 not more remote than lineal descendants of grandparents
 
 as provided in Section 10503-4, entitled to share in the estate, are of unequal degree of consanguinity to the intestate, so that those who are of the nearest degree of consanguinity, will take the share to which he or she would have been entitled, had all the descendants in the same degree of consanguinity with him or her, who died leaving issue, been living.” (Italics ours.)
 

 These sections were enacted piecemeal, and at different times in an attempt to define more clearly the legislative intent. All of them dealing with the same subject are to be considered
 
 in pari materia.
 

 Paragraphs 7 and 8 of Section 10503-4, General Code, now clearly provide that, in event distribution is to be made either to grandparents or their lineal descendants, the estate is to be divided equally into' halves. One half portion would be distributed or descend to those on the paternal side, and the other half portion to those on the maternal side of the intestate. If there be no descendants on one side then the other which would have descendants of grandparents would inherit more than one-half. Only, in event that there be neither grandparents nor lineal descendants of grandparents^ on both sides would the next of kin of the intestate inherit.
 

 
 *316
 
 The claim of Florence G. Bedell that as next of kin she is entitled to the entire estate cannot be maintained. While no grandparents survive, there are lineal descendants of both pairs of grandparents surviving Martha C. Smith. Under our interpretation of the statute they are entitled to share in the estate. Only where the nearest survivor is of a more remote degree than lineal descendants of grandparents, would the next of kin, as such, inherit.
 

 As we said previously, an examination of the seventh and eighth paragraphs of Section 10503-4, General Code, shows a manifest intention that the estate should be equally divided in halves, and that the half portions are to be distributed or descend separately according to the provisions of law. In other words, after the estate is equally divided into halves, descent depends upon the particular circumstances existing in the particular branch of the family, and apportionment is made as if there were two estates instead of one. Such a construction follows of necessity from the very basis of the adoption of a half-and-half provision.
 

 Both of the courts below recognized that to be the legislative intent, the Court of Appeals saying that “the statute requires a complete permanent and equal division between them as classes, and that the halves are apportioned among the members of each class according to the circumstances within each class, uninfluenced by conditions in the other class, no matter what such conditions may be.”
 

 The Court of Appeals, after reviewing the statutory provisions, concluded “that this real estate of Martha C. Smith devolved upon the descendants of the paternal grandparents
 
 per stirpes,
 
 and the other half to the descendants of the maternal grandparents,
 
 per stirpes,
 
 the roots in each case being the grandparents.”
 

 It is the contention of the appellant that this interpretation was erroneous. It is claimed that all those of equal degree of consanguinity to the intestate living
 
 *317
 
 should take
 
 per capita,
 
 and the descendants of those of the same degree of consanguinity, whose parents are dead, should take
 
 per stirpes.
 
 In such event, it is said that those of nearest degree of consanguinity to the intestate who are living must he taken as the
 
 stirps
 
 or roots in determining the descent.
 

 The eighth paragraph of Section 10508-4 is not altogether clear. It is susceptible of the interpretation that the
 
 per stirpes
 
 distribution or descent should be taken as from the grandparents. On the other hand, the words
 
 “per stirpes”
 
 in the statute can be construed to modify “lineal descendants” and not “grandparents.”
 

 Reference to the other sections is essential to ascertain the legislative intent as applicable to the facts before the court. It will be noticed that the provisions of Sections 10503-8 and 10503-9, General Code, are to apply to collateral heirs not more remote than lineal descendants of grandparents. It is claimed, however, that nothing in either section provides for anything but descent
 
 per stirpes,
 
 except where the property passes to the next of kin.
 

 It must be remembered that all of these sections are
 
 in pari materia.
 
 Section 10503-7, General Code, upon first reading would seem to apply only to “the descendants of an intestate, in a direct line of descent,” which would limit its application to lineal descendants. However, it is likewise provided that when the descendants are of equal degree of consanguinity to such intestate, “whether children, grandchildren or great-grandchildren
 
 or of a more remote degree of consanguinity to such intestate
 
 the estate shall pass to such persons of equal degree of consanguinity to such intestate in
 
 equal parts, however remote
 
 from the intestate such equal and common degree of consanguinity may be.” (Italics ours.)
 

 It is conceded that with reference to lineal descendants this section provides for a
 
 per capita
 
 distribution
 
 *318
 
 or descent where all are of equal degree of consanguinity, and that by Section 10503-8, General Code, a method of descent was provided where the lineal descendants were of unequal degree of Consanguinity.
 

 It is strenuously contended that neither section has any application where there are collateral heirs, but that they apply solely to instances involving lineal descendants.
 

 Section 10503-7, General Code, specifically declares that “the estate shall pass to such persons of equal degree of consanguinity to such intestate in
 
 equal parts,
 
 however remote from the intestate such equal and common degree of consanguinity may be.” That language makes its provisions apply to collateral heirs as well as lineal heirs. It is not limited to those lineal descendants in a direct line, but includes those of a more remote degree of consanguinity to the intestate. In fact it says that the
 
 per capita
 
 or equal division shall apply “however remote” the relationship may be from the intestate. Read in connection with Section 10503-9, General Code, the rules of Sections 10503r7 and 10503-8, General Code, apply to those “not more remote than lineal descendants of grandparents” as provided in Section 10503-4, General Code.
 

 In
 
 Ewers
 
 v.
 
 Follin,
 
 9 Ohio St., 327, this court held that a statute which contained practically the same wording as Section 10503-7, General Code, was to apply in “every case, in which an estate was to be divided among a class of descendants, whether their consanguinity to the intestate be lineal or collateral.” Section 10503-7, General Code, was formerly Section 8581, General Code, which has read exactly as it does now since March 14, 1853, and has been construed many times by this court.
 

 This rule that where the descendants, either lineal or collateral, are of equal degree of consanguinity, they take
 
 per capita
 
 as heirs in their own right,'and not by representation has been consistently approved
 
 *319
 
 and followed in this state. See
 
 Dutoit
 
 v.
 
 Doyle,
 
 16 Ohio St., 400, 405;
 
 Parsons
 
 v.
 
 Parsons,
 
 52 Ohio St., 470, 40 N. E., 165;
 
 Hasse
 
 v.
 
 Morison,
 
 110 Ohio St., 153, 143 N. E., 551.
 

 If the statute was properly construed in
 
 Ewers
 
 v.
 
 Follin, supra,
 
 the judgment of the Court of Appeals should he reversed. The Court of Appeals itself recognized the precedents of
 
 Ewers
 
 v.
 
 Follin, supra,
 
 and
 
 Hasse
 
 v.
 
 Morison, supra,
 
 hut said that “subsequent legislation modifying other related provisions may require a restricted meaning to be given, notwithstanding a judicial construction given when the language was in a different setting.” We are unable to conclude that any construction limiting the application of the provisions of Section 10503-7, General Code, to lineal descendants could be made without expressly overruling a long line of decisions of this court commencing with
 
 Ewers
 
 v.
 
 Follin, supra.
 

 Section 10503-7, General Code, provides that when all the descendants of an intestate aré of an equal degree of consanguinity they take equally. Under Section 10503-8, General Code, if some of those are living and others are dead, leaving children, those living take the same
 
 per capita
 
 share, to which they would be entitled if all were living, and the lineal descendants of those deceased take
 
 per stirpes.
 
 Section 10503-9, General Code, applies this method in all cases where the descendants of the intestate are “not more remote than the lineal descendants of grandparents.”
 

 Therefore, in line with previous decisions of this court, it is our conclusion that under paragraph 8 of Section 10503-4, General Code, the lineal descendants are designated as the roots and the phrase “of such grandparents” is descriptive only.
 

 Applying these rules to the facts in the instant case, on the paternal side the one-half share is to be divided into fourteen parts. Florence G. Bedell, a first cousin, as the nearest in consanguinity, would receive one
 
 *320
 
 twenty-eighth portion of the real estate. The remainder would be divided among the lineal descendants of the thirteen first cousins who are deceased,
 
 per stirpes,
 
 with the roots or
 
 stirps
 
 being first cousins.
 

 On .the maternal side of the family-the roots for the basis of descent are first cousins once removed. C. Birney Seymour and Sarah B. Evans, both being in this class, would each receive one-eighth portion as their
 
 per capita
 
 share, while Edwina M. Panton, daughter of Mary Maxson, would receive one-eighth, and Leila B. Callam and Frances M. Callam, children of Agnes B. Callam, would each receive one-sixteenth as their
 
 per stirpes
 
 shares-
 

 Since no rightful lien or encumbrance could be imposed upon the property by any co-tenant under the provisions of Section 10502-1, General Code, the spouses of the co-parceners were not necessary parties to the action in partition.
 

 For the reasons stated the judgment of the Court of Appeals is reversed and that of the Court of Common Pleas affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Day, Zimmerman, Williams, Myers and Gorman, JJ., concur.