WASHBURN, ADMRX., APPELLEE, *v.* SCURLOCK ET AL., APPELLANTS; WASHBURN, APPELLEE.

(No. 456—Decided October 5, 1982.)

*Mr. Thomas H. Monger,* for appellee.
*Mr. Robert K. McCurdy,* for appellants.

STEPHENSON, J. This is an appeal from a judgment entered by the Jackson County Court of Common Pleas, Probate Division, ordering the Estate of Alma Margaret Rosser to be divided as follows: one-half to appellee, Helen S. Washburn; one-fourth to defendant-appellant, Richard H. Scurlock; and one-fourth to defendant-appellant, Joyce Ann Scurlock. The appellants assign the following errors:

"1. The trial court erred in finding and ordering that Section 2105.06(F) of the Ohio Revised Code is applicable to the fact situation herein.

"2. The trial court erred in wholly ignoring case law precedent and the doctrine of stare decisis."

This action was instituted by appellee, as Administratrix of the Estate of Alma Margaret Rosser and sought a determination of the respective share the heirs of Alma Margaret Rosser were entitled to take under the Statute of Descent and Distribution, R.C. 2105.01 *et seq.* The undisputed facts, as alleged in the complaint, are as follows:

"1. Alma Margaret Rosser died intestate on June 24, 1980. Plaintiff was appointed Administratrix of the estate of said decedent in case number 80-110 Probate Court, Jackson County, Ohio, and said Helen S. Washburn is now the duly appointed, qualified and acting Administratrix of the estate of said decedent.

"2. Said decedent died leaving no surviving spouse, no children, no surviving lineal descendants and no surviving parent.

"3. Defendants, Richard H. Scurlock and Joyce Ann Scurlock, are respectively son and daughter of Troy McKinley Scurlock, who died November 14, 1932, leaving no other lineal descendants.

"4. Defendant, Helen S. Washburn, is the daughter of Ethan Willard Scurlock, who died May 28, 1969 leaving no other lineal descendants.

"5. Said Troy McKinley Scurlock and said Ethan Willard Scurlock were brothers of Alma Margaret Rosser.

"6. Plaintiff has in her possession, as Administratrix, substantial funds belonging to the estate of Alma Margaret Rosser which are now, or will be, available for distribution to the heirs and distributees of said decedent. The Defendants hereto constitute all of the persons who are heirs and distributees of the decedent."

Appellee's position herein is that under the facts, the applicable statute of descent and distribution is R.C. 2105.06 which provides as follows:

"When a person dies intestate having title or right to any personal property, or to any real estate or inheritance in this state, the personal property shall be distributed, and the real estate or inheritance shall descend and pass in parcenary, *except as otherwise provided by law,* in the following course:

"* * *

"(F) If there is no spouse, no children or their lineal descendants, and no parent surviving, to the brothers and sisters, whether of the whole or of the half blood of the intestate, or their lineal descendants, per stirpes;" (Emphasis added.)

Accordingly, appellee argues that the estate herein should be divided into two halves, with one-half going to her through her deceased father, Ethan Willard Scurlock, and that the other one-half should pass to appellants through their father, Troy McKinley Scurlock.

The appellants' position herein is that the general rule of per stirpes distribution contained in R.C. 2105.06 is inapplicable herein and that under R.C. 2105.12, the distribution should be per capita. R.C. 2105.12 provides as follows:

"When all the descendants of an intestate, *in a direct line of descent,* are on an equal degree of consanguinity to the intestate, the estate shall pass to such persons in equal parts, however remote from the intestate such equal and common degree of consanguinity may be." (Emphasis added.)

The pivotal issue thus posited for review, more precisely stated, is two-fold: (1) whether R.C. 2105.12 operates as an exception to the devolution of property cast by R.C. 2105.06(F) and (2) if so, does the R.C. 2105.12 language "in a direct line of descent" operate to exclude collateral heirs of an intestate, *i.e.,* does such language refer only to lineal descendants of the intestate such as grandchildren and great grandchildren.

We begin our analysis by an examination of the legislative history of R.C. 2105.06 which in predecessor form was a part of Ohio law from early times. The history is fully detailed in *Hasse* v. *Morison* (1924), 110 Ohio St. 153, 162, and need not here be repeated in full. In 3 Ohio Laws 280 (1805), a statute of descent and distribution was enacted which provided in Section 10 the following:

"That where any of the before mentioned children, brothers, sisters or their legal representatives, in the same degree of consanguinity or kindred, come into the partition of any real estate, they shall take *per capita,* that is to say, by persons; but where one or more of them are dead

and one or more living, the issue of those dead shall have a right to partition, and such issue, in such case, shall take *per stirpes,* that is to say, the share of their deceased parents."

The substance of the section was carried in subsequent legislation. In 1853 in 51 Ohio Laws 501, Section 10 was divided into Sections 5, 6, 7 and 8 and read as follows:

"5. When any person shall die intestate leaving children, and none of the children of such intestate shall have died, leaving children or their legal representatives, such estate shall descend to the children of such intestate, living at the time of his or her death, in equal proportions.

"6. The provisions of the last preceding  section shall apply in every case *in which there are several descendants in a direct line of lineal descent,* and all of equal degree of consanguinity to such intestate, whether children, grand children, or great grand children, or of a more remote degree of consanguinity to such intestate; so that the estate shall pass to such persons of equal degree of consanguinity to such intestate in equal parts, however remote from the intestate such equal and common degree of consanguinity may be.

"7. If any of the children of such intestate be living and any be dead, the estate shall descend to the children of such intestate who are living, and to the legal representatives of such of his or her children as are dead, so that each child of the intestate who shall be living, shall inherit the share to which he or she would have been entitled, if all the children of the intestate had been living, and so that the legal representatives of the deceased child or children of the intestate shall inherit equal parts of that portion of the estate to which such deceased child or children would have been entitled had such deceased child or children been living.

"8. The provisions of the last preceding section shall be construed to apply in all cases in which the descendants of the intestate, entitled to share in the estate, are of unequal degree of consanguinity to the intestate, so that those who are of the nearest degree of consanguinity shall take the share to which he or she would have been entitled, had all the descendants in the same degree of consanguinity with him or her, who shall have died leaving issue, been living." (Emphasis added.)

In *Ewers* v. *Follin* (1859), 9 Ohio St. 327, the court stated, *inter alia,* at page 330, with respect to the 1853 legislation:

"There is some ambiguity arising from the language employed in the 6th section, which has probably led to the reservation of the question in this case. It might, upon a first inspection of that section, be supposed that the 'descendants' to which it refers, were the lineal descendants only of the intestate, such as grandchildren and great-grandchildren; but a more careful examination shows the contrary. It will be seen that in the 6th section children as well as grandchildren and great-grandchildren are named, which, if the lineal descendants of the intestate alone are intended, would have been unnecessary, the children of the intestate having been provided for in the 5th section. The concluding language of that section also shows, that descendants, in the sense of those to whom the estate descends, were in the contemplation of the legislature. Its provisions are to apply 'so that the estate shall pass to such persons of equal degree of consanguinity to such intestate in equal parts, however remote from the intestate such equal and common degree of consanguinity may be.' "

The court then held that where one died without issue, was never married, and had brothers and sisters who predeceased the intestate leaving children and a deceased nephew leaving children, the children of the brothers and sisters took in equal shares with the children of the deceased nephew dividing the one share such deceased nephew would have taken if living.

Subsequently, the subject of Section 6, *supra,* appeared in G.C. 8581 as follows:

"When all of the descendants of an intestate, in a direct line of descent, are of an equal degree of consanguinity to the intestate, whether children, grandchildren or great-grandchildren, or of a more remote degree of consanguinity to such intestate, the estate shall pass to such persons of equal degree of consanguinity to such intestate in equal parts, however remote from the intestate such equal and common degree of consanguinity may be."

It was included in almost identical language in the 1932 adoption of the Probate Code as G.C. 10503-7. In the adoption of the Revised Code, the words *"whether children, grandchildren or great-grandchildren, or of a more remote degree of consanguinity to such intestate"* were omitted so that R.C. 2105.12 reads as it presently appears.[1]

The Ohio Supreme Court has consistently interpreted the various predecessor forms of R.C. 2105.12 consistent with the construction in *Ewers* v. *Follin, supra, i.e.,* that it operated to require equality of distribution to descendants of the intestate, whether such descendants were either direct or collateral, when the descendants were of equal consanguinity to the intestate. Thus, in *Snodgrass* v. *Bedell* (1938), 134

---

[1] While appellee's brief notes this omission, the brief does not articulate why such omission would result in the exclusion given retention of the language "however remote from the intestate such equal and common degree of consanguinity may be." In any event, the omission does not aid appellee inasmuch as the General Assembly in adopting the Revised Code

Ohio St. 311, 318 [12 O.O. 103], the court stated, *inter alia:*

"Section 10503-7, General Code [R.C. 2105.12], specifically declares that *'the estate shall pass to such persons of equal degree of consanguinity to such intestate in equal parts, however remote from the intestate such equal and common degree of consanguinity may be.' That language makes its provisions apply to collateral heirs as well as lineal heirs.* It is not limited to those lineal descendants in a direct line, but includes those of a more remote degree of consanguinity to the intestate. In fact it says that the *per capita* or equal division shall apply 'however remote' the relationship may be from the intestate. * * *

"In *Ewers* v. *Follin,* 9 Ohio St., 327, this court held that a statute which contained practically the same wording as Section 10503-7, General Code, was to apply in 'every case, in which an estate was to be divided among a class of descendants, whether their consanguinity to the intestate be lineal or collateral.' Section 10503-7, General Code, was formerly Section 8581, General Code, which has read exactly as it does now since March 14, 1853, and has been construed many times by this court.

"This rule that where the descendants, either lineal or collateral, are of equal degree of consanguinity, they take *per capita* as heirs in their own right, and not by representation has been consistently approved and followed in this state. See *Dutoit* v. *Doyle,* 16 Ohio St., 400, 405; *Parsons* v. *Parsons,* 52 Ohio St., 470, 40 N.E., 165; *Hasse* v. *Morison,* 110 Ohio St., 153, 143 N.E., 551." (Emphasis added.)

In *Hasse* v. *Morison* (1924), 110 Ohio St. 153, 166, where the court held that as to ancestral real property that inheriting nieces and nephews did so per capita, the court made manifest that the predecessor of R.C. 2105.12, *i.e.,* G.C. 8581, was to operate as an exception to the general rules of descent and distribution by the following:

"As stated by Judge Rockel in his work on Probate Practice (2d Ed.), vol. 1, p.841:

" 'This section [8581, G.C.] disturbs the general rule that property descends *per stirpes* and not *per capita.* Under this statute, when all the descendants are of an equal degree of consanguinity they should share equal. That is, supposing a brother died before his father, leaving three children, and another brother died leaving nine children, the estate then would be divided into twelve equal parts, the children of one brother receiving one-fourth and the other three-fourths. If one brother would have been living at the death of his parent, the estate would then have been divided into two equal parts, the living brother receiving one part and the children of the dead brother the other.'

"In view of the fact that these next of kin of the intestate take by representation of their fathers and mothers, who were the brothers and sisters of the intestate, it might seem that they would take *per stirpes,* but legislative action has provided a different rule, and, since it has been held that Section 8581 applies to nephews and nieces inheriting from an intestate, we do not feel at this time justified in changing such holding."

The lower courts of Ohio have consistently held that inheriting nieces and nephews of deceased uncles and aunts who would have inherited, if living, inherit per capita and not per stirpes. *Kincaid* v. *Cronin* (1939), 61 Ohio App. 300 [15 O.O. 198]; *Morrow* v. *Morrow* (App. 1934), 18 Ohio Law Abs. 235; *Treat* v. *Bessey* (1913), 1 Ohio App. 125; *Wetherill*

---

specifically stated in R.C. 1.24 (now repealed) that it did "not" intend to change the law as heretofore expressed by the section or sections of the General Code. See *State* v. *Kotapish* (1960), 171 Ohio St. 349 [14 O.O. 2d 77].

v. *Cummins* (P.C. 1942), 24 O.O. 489; *Goff* v. *Disbennet* (1911), 14 Ohio C.C. (N.S.) 557; *Elliott* v. *Shaw* (1913), 15 Ohio N.P. (N.S.) 81.

Likewise, the text writers are in uniform accord with the rule that, under the facts *sub judice,* per capita distribution is required. Merrick-Rippner, Ohio Probate Law 116, Chapter 29 (Example No. 13); 6 West's Ohio Practice 351, Section 573; 2 Adams & Hosford, Ohio Probate Practice (6 Ed.) 76 (author's text on R.C. 2105.12).

Appellee herein argues that there is an irreconcilable conflict between R.C. 2105.06 and 2105.12 and that the general provisions of R.C. 2105.06 should prevail. In support of her argument, appellee cites *Ryan* v. *Dixon* (P.C. 1938), 26 Ohio Law Abs. 450 [12 O.O. 185], and *Reimer* v. *Finnegan* (P.C. 1945), 32 O.O. 391. In both of the above cases, the court was faced with a conflict between R.C. 2105.12 and a subsection of the predecessor to R.C. 2105.06, not applicable herein. We deem it significant that on at least three occasions, *Ewers* v. *Follin, supra* (9 Ohio St. 327); *Hasse* v. *Morison, supra* (110 Ohio St. 153), and *Snodgrass* v. *Bedell, supra* (134 Ohio St. 311 [12 O.O. 103]), the Supreme Court has construed and interpreted predecessor statutes to R.C. 2105.12 and has given no indication of any irreconcilable conflict with the general Statute of Descent and Distribution. Rather, the tenor of their holdings is that R.C. 2105.12 is *in pari materia* with R.C. 2105.06 and operates as an exception. This is consistent with the intention of the General Assembly in R.C. 2105.06 that the property shall descend as provided therein *"except as otherwise provided by law."* Accordingly, we find appellee's argument herein to be without merit.

For the reasons above set forth, the court erred in failing to order an equal division of the estate — one-third to each of the nieces and the nephew. Accordingly, appellants' first and second assignments of error are sustained and the judgment is reversed and final judgment is entered in favor of appellants.

*Judgment reversed.*

GREY, P.J., and ABELE, J., concur.